# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA,                    :
                                         :
Plaintiff,                               :        Civil Action No. 1:26-cv-01210-CRC
                                         :
v.                                       :
                                         :
ALI RAZJOOYAN, et al.,                   :
                                         :
Defendants.                              :
                                         :
                                         :
_____         :

## DEFENDANTS' OPPOSITION TO PLAINTIFF DISTRICT OF COLUMBIA'S MOTION FOR PRELIMINARY INJUNCTION

Defendants Ali "Sam" Razjooyan, Houri Razjooyan, and Eimon "Ray" Razjooyan, appearing pro se, respectfully oppose the District of Columbia's Motion for Preliminary Injunction.

## INTRODUCTION

The District asks this Court to impose sweeping, merits-level relief at the outset of the case, before Defendants have answered, before dispositive motions are resolved, before discovery is completed, and before the Court has tested the District's allegations through an adversarial evidentiary record.  The motion should be denied.

The District's request is not a narrow request to preserve the status quo. It seeks to change the status quo by restricting Defendants' ability to lease units, enter housing assistance arrangements, acquire property, sell or encumber assets,



RECEIVED

MAY 28 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

refinance property interests, and conduct ordinary real estate activity. That is effectively the permanent injunction the District seeks in the Complaint, imposed now without trial.

Defendants do not dispute that tenants are entitled to safe and habitable housing. Defendants do not ask the Court to ignore properly proven, property-specific life-safety issues. But the proper remedy is a targeted, evidence-based order addressing specific, verified violations at specific properties after Defendants have had a fair opportunity to be heard. It is not a business-wide injunction based on accusation, press statements, generalized character attacks, and disputed allegations about dozens of properties and entities that are not all before this Court.

The District held a public press conference when it filed this case, publicly branded Defendants as participants in a criminal enterprise, and now seeks preliminary relief that would inflict maximum economic pressure before the Court can adjudicate the actual claims. That is not the purpose of preliminary injunctive relief. Preliminary injunctions prevent imminent irreparable harm; they are not tools to punish, coerce settlement, freeze ordinary asset activity, or impose a litigation handicap before liability is established.

The motion should be denied. At most, if the Court determines that interim relief is warranted, the Court should enter only a narrow, property-specific order

requiring verified repair access, compliance reporting, and inspection-based remediation of specific life-safety violations.

## BACKGROUND

The District filed this civil enforcement action after publicly announcing broad allegations against Defendants. The Complaint asserts claims under the Consumer Protection Procedures Act, the District False Claims Act, and RICO. The District now moves for a preliminary injunction before Defendants' answer and before the Court has considered dispositive challenges to the sufficiency of the claims.

The District's motion seeks three principal categories of relief: first, an order requiring abatement of alleged conditions at six properties; second, an order prohibiting Defendants from entering new leases or Housing Assistance Payment contracts; and third, an order prohibiting or restricting Defendants from acquiring new multi-family real property, obtaining new loans, encumbering existing interests, or modifying security interests.

That requested relief is broader than necessary and is not properly supported on the current record. The District relies heavily on allegations concerning properties, LLCs, receiverships, bankruptcies, lenders, alleged straw purchasers, and third-party entities. The motion blurs distinctions among different defendants, different ownership entities, different properties, different time periods, different

lenders, and different legal proceedings. It treats every disputed allegation as established fact and asks the Court to infer that any property-related activity by any Defendant is presumptively unlawful.  That approach is improper at the preliminary injunction stage.

## LEGAL STANDARD

A preliminary injunction is an extraordinary remedy. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008). The moving party must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. Id. at 20.

Because this case is now before a federal court, Federal Rule of Civil Procedure 65 governs the procedure for preliminary injunctive relief. The District cannot avoid the federal injunction standard by characterizing its request as a statutory CPPA injunction. Even where a statute authorizes injunctive relief, the Court must still ensure that any preliminary order complies with Rule 65, due process, Article III limits, and the equitable limits on preliminary relief.

The District bears the burden of proof. Allegations, press statements, and generalized narratives do not satisfy that burden. A preliminary injunction must be supported by specific evidence showing imminent, non-speculative harm and a remedy narrowly tailored to that harm.

<u>ARGUMENT</u>

I.    THE DISTRICT SEEKS PREMATURE, MERITS-LEVEL RELIEF BEFORE DEFENDANTS HAVE HAD A FAIR OPPORTUNITY TO TEST THE CLAIMS.

The requested injunction would function as a partial final judgment. It would restrict Defendants' real estate business, leasing activity, ability to finance property interests, ability to acquire or dispose of property, and ability to participate in District housing programs. That is not merely preservation of the status quo. It is the core permanent relief the District seeks, imposed before trial.

The timing matters. Defendants have not yet answered. The Court has not resolved any dispositive motions. Discovery has not tested the District's allegations. The District asks the Court to accept disputed allegations as findings and then impose broad economic restrictions based on those untested allegations.

Preliminary injunctions are not designed to give a plaintiff the practical benefit of final relief at the outset of litigation. The Court should reject the District's attempt to convert accusation into injunction.

II.  THE DISTRICT HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS AGAINST EACH DEFENDANT.

The District repeatedly treats Ali Razjooyan, Houri Razjooyan, and Eimon Razjooyan as one interchangeable unit. That is not enough.

The District must establish likely success as to each defendant and each claim. It must show the specific conduct by each individual that supports liability. The

motion instead relies on collective pleading, guilt by association, and family relationship. That is especially defective as to Houri Razjooyan and Eimon Razjooyan, who are not alleged with sufficient particularity to have personally managed each property, controlled each condition, made each representation, or participated in each alleged act.

A. The District Has Not Established Individual Liability as to Houri and Eimon Razjooyan.

The District's motion does not make a property-by-property showing that Houri or Eimon personally controlled the alleged conditions at the six properties. It does not establish that either had day-to-day operational control, authority over repairs, direct communications with tenants, or direct involvement in the alleged CPPA violations at each property.

The District cannot obtain an injunction against individuals based merely on familial relationship, ownership interests, or conclusory assertions of participation. Any injunction must be based on personal conduct and evidence of likely future violations by that person.

B. The District's CPPA Theory Is Overextended.

The District's CPPA theory assumes that every alleged housing code issue automatically establishes consumer fraud and supports broad business-wide relief. That overstates the matter.

Defendants do not deny that housing providers must comply with applicable housing laws. But a housing code violation and an enterprise-wide fraud scheme are not the same thing. The District must prove the elements of its claims, including who made what representation, to whom, when, with what knowledge, and how that representation caused actionable harm.

The District also relies on alleged subsidy payments and suggests that housing assistance payments were fraudulently obtained because conditions later became disputed. That argument is flawed. Housing subsidy payments are made for the tenant's use and occupancy of a housing unit. The tenant receives housing. The District and its subsidy administrators conduct their own inspection and approval process at the outset of the subsidy relationship. If the District approved units for subsidy participation, it cannot simply recast all later-paid subsidies as fraudulent merely because it now disputes the condition of certain properties.

That does not mean later code violations are irrelevant. It means the District's leap from alleged conditions to fraud, false claims, and racketeering is not established for purposes of a preliminary injunction.

C. The District's RICO and False Claims Theories Are Not a Basis for Preliminary Business-Wide Relief.

The motion is framed around the CPPA, but the District's rhetoric relies heavily on RICO-style allegations of a "criminal enterprise," straw purchasers,

shell companies, and fraud. Those allegations are serious, disputed, and not yet adjudicated.

RICO and False Claims Act theories require proof of specific elements. The District has not established those elements through tested evidence. It has not shown, for preliminary injunction purposes, that each Defendant committed predicate acts, knowingly submitted false claims, or participated in an actionable enterprise. The Court should not rely on those allegations to impose broad restrictions that would materially impair Defendants' property and business rights before trial.

### III. THE DISTRICT HAS NOT SHOWN IRREPARABLE HARM SUPPORTING THE FULL SCOPE OF THE REQUESTED INJUNCTION.

The District's strongest argument concerns alleged present housing conditions at specific properties. If the Court finds verified life-safety conditions at a specific property, the proper remedy is targeted property-specific relief.

But the District goes far beyond that. It seeks restrictions on new leases, HAP contracts, acquisitions, loans, refinancings, security interests, and asset activity. The District has not shown that all of those activities will cause imminent irreparable harm. Much of the requested relief is economic, prophylactic, and speculative.

The District's theory is essentially: because it alleges past misconduct, the Court should assume any future business activity will be unlawful. That is not

enough. Irreparable harm must be likely, imminent, and supported by evidence. It cannot rest on speculation that Defendants might someday acquire, finance, lease, or manage property in a way the District might later challenge.

The requested restrictions on sales, loans, security interests, and asset activity are particularly improper. Those restrictions would impair Defendants' ability to raise money, refinance debt, sell assets, resolve lender disputes, fund repairs, and mitigate alleged harm. If the District's concern is tenant safety, then preventing Defendants from using ordinary property transactions to generate repair funds may worsen the very conditions the District invokes.

IV.    THE REQUESTED INJUNCTION IS OVERBROAD AND NOT NARROWLY TAILORED.

An injunction must be specific and narrowly tailored. Fed. R. Civ. P. 65(d). The District's proposed relief is not.  The motion seeks to restrict conduct involving "shell companies," "straw purchasers," affiliates, security interests, loans, acquisitions, leases, and HAP contracts. That language is vague and invites future contempt disputes over undefined categories of conduct. It also risks binding non-parties and entities that are not properly before the Court.

Rule 65(d)(2) limits who may be bound by an injunction: parties, their officers, agents, servants, employees, and attorneys, and persons in active concert or participation with them who receive actual notice. The District cannot use a preliminary injunction to regulate every LLC, lender, receiver, purchaser, manager,

tenant, contractor, or third party that may have some disputed connection to Defendants.

The Court should reject any injunction that is not limited to identified defendants, identified properties, identified conduct, and clearly defined obligations.

V. THE DISTRICT'S REQUESTED ASSET AND TRANSACTION RESTRICTIONS ARE AN IMPROPER END RUN AROUND ORDINARY CIVIL PROCEDURE.

The District's requested order would effectively freeze or restrict Defendants' ability to sell, refinance, acquire, or encumber real estate assets before judgment. That is not ordinary preliminary relief. It is a prejudgment restraint on property rights.

The District seeks damages, penalties, restitution, and other monetary relief. It cannot use a preliminary injunction to secure a future money judgment absent a specific equitable basis, properly traced assets, or a clear statutory entitlement to that particular restraint. The requested restrictions are not limited to preserving a specific res. They broadly restrict ordinary financial and real estate transactions.

The practical effect would be punitive. It would make it harder for Defendants to pay lawyers, fund repairs, resolve lender issues, comply with receivership orders, sell distressed assets, or satisfy obligations. A preliminary injunction should not be used to create financial paralysis before liability is established.

## VI.   THE BALANCE OF EQUITIES DOES NOT SUPPORT THE REQUESTED RELIEF.

The District argues that Defendants have no legitimate interest in violating the housing code. Defendants agree. But that is not the actual balance presented by the motion.

The actual balance is whether the Court should impose a broad business-wide restraint before trial, before an answer, before dispositive motions, and before individualized findings against each Defendant. That relief would cause substantial harm. It would impair property rights, financing options, leasing options, potential sales, and the ability to generate funds necessary to address alleged conditions.

The District has available narrower tools. It can inspect properties. It can issue notices of infraction. It can pursue property-specific enforcement. It can seek targeted orders requiring access, repairs, reports, and compliance deadlines. It can ask for expedited discovery. It can seek relief against specific conduct supported by specific evidence.

Because narrower remedies exist, the balance of equities weighs against the sweeping injunction requested.

## VII.   THE PUBLIC INTEREST FAVORS SAFE HOUSING, BUT ALSO FAVORS DUE PROCESS AND NARROWLY TAILORED RELIEF.

The public has an interest in safe housing. Defendants do not dispute that.  But the public also has an interest in fair adjudication, accurate factfinding, lawful

procedure, and avoiding government overreach. The District held a press conference, publicly condemned Defendants, and then sought preliminary relief that would impose severe economic consequences before liability is adjudicated. The Court should not allow public accusations to substitute for proof.

A targeted order addressing verified, current, property-specific life-safety issues may serve the public interest. A sweeping order that restrains broad categories of business conduct and asset activity based on disputed allegations does not.

VIII.    IF THE COURT CONSIDERS ANY INJUNCTIVE RELIEF, IT SHOULD ORDER A NARROW ALTERNATIVE.

If the Court determines that interim relief is appropriate, Defendants respectfully request that the Court deny the District's proposed order and instead enter a narrow order limited to specific, verified conditions. Any interim order should:

1. identify the specific property and specific violation at issue;

2. require reasonable access for inspection and repair;

3. require a written repair schedule for verified life-safety issues;

4. permit Defendants to sell, refinance, borrow, or otherwise transact as necessary to fund repairs and satisfy property obligations;

5. avoid restrictions on unrelated properties, future acquisitions, financing, or asset sales unless the District proves a specific imminent harm;

6. avoid binding non-parties except as permitted by Rule 65(d);

7.  preserve Defendants' right to contest allegations, present evidence, file dispositive motions, and demand trial on disputed issues; and

8.  require the District to proceed through property-specific enforcement rather than enterprise-wide punishment.

This approach protects tenants without imposing premature final relief.

## IX.    DEFENDANTS REQUEST AN EVIDENTIARY HEARING IF THE COURT IS INCLINED TO GRANT ANY CONTESTED RELIEF.

Defendants dispute the District's factual allegations, including allegations concerning control, intent, causation, ownership, property conditions, repair efforts, subsidy representations, and the individual roles of Houri and Eimon Razjooyan.

If the Court is inclined to grant any contested preliminary injunction, Defendants request an evidentiary hearing. Defendants should be permitted to cross-examine declarants, challenge the District's exhibits, present property-specific evidence, present evidence of repair efforts and access issues, and present evidence distinguishing the roles of each Defendant.

## CONCLUSION

The District's motion should be denied.  The requested injunction is premature, overbroad, punitive, and not narrowly tailored. It seeks merits-level relief before Defendants have answered, before dispositive motions, before discovery, and before trial. It improperly treats disputed allegations as established

facts and improperly groups three individuals together without individualized proof.

If the Court determines that interim relief is necessary, the Court should deny the District's proposed order and enter only a narrow, property-specific order directed to verified life-safety violations, reasonable inspection access, repair scheduling, and compliance reporting.

Dated: May 26, 2026

Respectfully submitted,

/s/ Eimon Razjooyan
Eimon Razjooyan
Defendant, Pro Se
117 Bytham Ridge Lane
Potomac, Maryland 20854

/s/ Houri Razjooyan
Houri Razjooyan
Defendant, Pro Se
117 Bytham Ridge Lane
Potomac, Maryland 20854

/s/ Sam Razjooyan
Sam Razjooyan, Pro Se
117 Bytham Ridge Lane
Potomac, Maryland 20854

<u>CERTIFICATE OF SERVICE</u>

I certify that on May 28, 2026, I served a copy of this filing on counsel for Plaintiff by CM/ECF to registered users and, if required, by email to:


Laura C. Beckerman
Senior Trial Counsel
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Laura.Beckerman@dc.gov


Matthew Meyer
Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 6th Street NW, 10th Floor
Washington, DC 20001
Matthew.Meyer2@dc.gov


Timothy S. Baird
1021 East Cary Street, Suite 810
Richmond, VA 23219-4071


/s/ Sam Razjooyan
Sam Razjooyan