**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DISTRICT OF COLUMBIA,<br><br>*Plaintiff*,<br><br>v.<br><br>ALI RAZJOOYAN, et al.,<br><br>*Defendants*. | No. 1:26-cv-01210-CRC |

**PLAINTIFF THE DISTRICT OF COLUMBIA'S REPLY IN SUPPORT OF ITS
MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff District of Columbia (the "District") submits this Reply in support of its Motion

for Preliminary Injunction, pursuant to Local Rule 7(d). The District's Motion for Preliminary

Injunction ("Motion") was filed more than three months ago and describes in vivid detail the

horrible and illegal conditions in which the tenants of Defendants Ali Razjooyan, Houri

Razjooyan, and Eimon Razjooyan (collectively, "Defendants") have been forced to live. These

illegal conditions violate the District's Consumer Protection Procedures Act ("CPPA"), D.C.

Code § 28-3901, *et seq.*, and necessitate immediate relief so that District residents can live in

safe and habitable housing. In their Opposition, Defendants offer not one shred of evidence to

dispute the illegal conditions and cite no caselaw to support their arguments against a

preliminary injunction. Because the District meets both the D.C. *Dacul* and the federal common

law tests for the issuance of a preliminary injunction, the District's Motion should be granted.[1]

---

[1] Defendants' Opposition to the District's Motion for Preliminary Injunction is signed by all
three defendants using "/s/" typed signatures. ECF 25 at 14. However, the Certificate of Service
is signed by Ali ("Sam") Razjooyan alone. *Id.* at 15. The Local Rules permit typed signatures
when the parties file electronically after obtaining a CM/ECF account. *See* LCvR 5.4. Here, only

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Since late 2015, Ali Razjooyan, Houri Razjooyan, and Eimon Razjooyan (collectively, "the Defendants") have operated an Enterprise that has owned or controlled over 40 multi-family residential properties, comprising over 70 buildings and over 600 rental units in the District. ECF 1-17, Complaint ¶ 41, Appendix A. The Defendants and other Enterprise participants have defrauded the District's housing subsidy programs of over $16 million, and have left their tenants to live in illegal, inhumane conditions. *Id.* ¶¶ 8-13. While many properties have fallen out of Defendants' control, tenants at the remaining properties continue to live in horrendous conditions.

To stop this ongoing illegal scheme and bring relief to long-suffering District residents, the District filed its Motion on February 12, 2026. ECF 1-16. The District's Motion was brought under the CPPA to abate illegal conditions at six properties that remain under Defendants' ownership and control: 1035 48th Street NE, 2840 Langston Place SE, 2844 Langston Place SE, 2850 Langston Place SE, 2908 Langston Place SE, and 3615 B Street SE.[2] The District also seeks to prevent these recurrent CPPA violations by halting Defendants' ability enter into new tenancies, acquire new multi-family residential properties, or alter their secured interest in existing properties absent approval of this Court. Defendants failed to file an opposition, and on

---

Ali Razjooyan has CM/ECF filing privileges, and this Court has ruled that Ali Razjooyan cannot represent fellow *pro se* parties. *See* May 15, 2026 Minute Order (regarding ECF access); May 27, 2026 Minute Order (regarding representation). If it is the case that Ali Razjooyan filed electronically on behalf of Eimon and Houri Razjooyan, such filing contravened the Court's Minute Orders. If Defendants' Opposition was instead filed in person or via mail, then it was misleading to sign with e-signatures. The District raises these matters to ensure appropriate participation by all Defendants, given that Houri and Eimon Razjooyan have not appeared at any court hearing in this matter, and given Ali Razjooyan's prior history of submitting false documents to the District of Columbia Bankruptcy Court, *see* ECF 8 at 2.

[2] After the filing of the District's Motion for Preliminary Injunction, the District was informed that 2844 Langston Place SE had been placed into receivership by the lender. Therefore, the District is no longer seeking relief related to this property. *See* ECF 16.

March 25, 2026, the D.C. Superior Court held an evidentiary hearing on the District's Motion. *See* Transcript of March 25, 2026 Evidentiary Hearing. *District of Columbia v. Ali Razjooyan et al.,* Case No. 2026 CA-000985-B (attached as Exhibit 1).. Despite having been timely served with process, including with notice of the hearing, no Defendant appeared at the March 25, 2026 hearing. *See* ECF 1-14 (Affidavit of Service); *see generally* Ex. 1 (lack of appearance of Defendants).

At the hearing, six witnesses testified to the Defendants' repeated and ongoing violations of the CPPA. Three tenants provided vivid testimony about horrific violations of the District's Housing Code and Property Maintenance Code in their apartments. Musa Khaliq, a tenant at 3615 B Street SE, testified that sewage repeatedly leaks into his kitchen, bedroom, and bathroom from the floors above and his apartment is infested with rats "as big as puppies." Ex. 1 at 91:1-106:25. Nihesha Browning, who lives at 3615 B Street SE with her two children, testified about recurring leaks in her kitchen and bathroom, repeated hot water outages, mice and roaches in her unit, and a rat infestation so dire that rats destroyed the wiring in her car. Ex. 1 at 107:1-138:23. The leaks and infestations have led to multiple doctor's trips for her young son, who is suffering from asthma. *Id*. Queshonna Shaw, who lives with her two children at 1035 48th Street NE, testified she suffered mice and cockroach infestations and leaks in her bathroom, kitchen, and bedroom, including a leak in her children's bedroom that forced her two children to sleep in the living room. Ex. 1 at 139:1-154:8. During a recent winter, the heat went out in her apartment and was not resolved for several months, leading her to temporarily move her and her children into a shelter. *Id*.

The District presented evidence that these types of violations are not isolated occurrences. Keith Parsons, Strategic Enforcement Administrator for the District of Columbia

3

Department of Buildings ("DOB"), testified that there existed unabated Housing Code and Property Maintenance Code violations at each of the relevant properties, including 75 violations at 2908 Langston Place SE, 18 violations at 3615 B Street SE, 39 violations at 1035 48th Street NE, 28 violations at 2840 Langston Place SE, and 38 violations at 2850 Langston Place SE. Ex. 1 at 38:25-48:11. Through the testimony of Mr. Parsons, the District successfully introduced into evidence DOB Notices of Infraction that document, with written descriptions and pictures, each of these unabated violations and the notice that DOB provided to Defendants through the property's ownership entity. Ex. 1 at 42-55 (Exhibits 1A to 1UUUUU).[3]

Cullen Hamilton, an investigator at the Office of the Attorney General, testified that he inspected each of the properties in January and February 2026. Inspector Hamilton witnessed trash accumulation, lack of heat, pest infestation, missing fire extinguishers, and leaks at 1035 48th Street NE (Ex. 1 at 53:13-62:8); leaks, an unsecured front door, and trash accumulation at 2840 Langston Place SE (Ex. 1 at 63:15-66:3); missing windows and trash accumulation at 2850 Langston Place SE (Ex. 1 at 70:3-71:23); a flooded basement, missing windows, unlocked front doors, a missing fire extinguisher, and trash accumulation at 2908 Langston Place SE (Ex. 1 at 71:24-76:25); and trash accumulation, missing fire extinguishers, and leaks at 3615 B Street SE (Ex. 1 at 77:13-79:12). The District successfully introduced into evidence the photographs and video that Mr. Hamilton had taken at the properties documenting the illegal conditions. Ex. 1 at 58, 87 (Exhibits 2A to 2PPP).

The District also presented evidence that Ali Razjooyan and Houri Razjooyan have ownership and control of the relevant properties at which illegal conditions have been occurring.

---

[3] Given the voluminous nature of the exhibits admitted into evidence at the hearing on the Motion for Preliminary Injunction, the District has provided access to the exhibits via a Box link: https://tinyurl.com/PI-Exhibits. *See* ECF 9-3.

Ali Razjooyan owns and controls 1035 48th Street NE, as he signed loans on behalf of the LLC which owns the property, 1035 48th Street NE, DE LLC. Ex. 1 at 160:1-163:11. Ali Razjooyan owns and controls 2840 Langston Place SE, as he signed loans on behalf of 2840 Langston Place SE LLC, the LLC which owns the property. Ex. 1 at 163:12-168:8. Ali Razjooyan owns and controls 2850 Langston Place SE, as he signed loans on behalf of 2850 Langston Place SE, LLC, the LLC which owns the property. Ex. 1 at 169:7-169:23 Ali Razjooyan owns and controls 2908 Langston Place SE, as he signed loans on behalf of 2908 Langston Pl SE, LLC, the LLC which owns the property. Ex. 1 170:1-170:13. Houri Razjooyan owns and controls 3615 B Street SE, as she signed loans on behalf of 3615 B Street SE LLC. Ex. 1 at 170:14-25. The District acknowledged at the March 25th evidentiary hearing that there was insufficient evidence of Defendant Eimon Razjooyan's control over the specific properties at issue to include him in the preliminary relief sought. Ex. 1 at 159:13-160:9.[4]

Finally, the District presented evidence that Defendants were attempting to refinance properties as recently as February 12, 2026—the day the Motion for Preliminary Injunction was filed. Ex. 1 at 107:4-110:2. The contemplated refinance of 3615 B Street SE would have provided Houri Razjooyan with a "cashout refi" to extract over $500,000 from a property with 18 documented violations at of the Housing Code and Property Maintenance Code, sewage leaks, and rats as big as puppies. *Id.* at 109:1-13; *see supra*.

## II. LEGAL STANDARD

When seeking a preliminary injunction under the Consumer Protection Procedures Act, which expressly authorizes the Office of Attorney General to seek injunctions "in the public interest," D.C. Code § 28-3909(a), the District is not bound by the traditional common-law test

---

[4] Given this and the lender receivership now in place over 2844 Langston Place SE, *see* footnote 2 *supra*, the District is submitting an updated Proposed Order that reflects these updates.

governing preliminary injunctions. *See* ECF 9-1 at 22 (citing *District of Columbia v. Town Sports Int'l, LLC*, No. 2020 CA 003691 B, 2020 WL 12772522 at *4 (D.C. Super. Ct. Oct. 8, 2020)). In order to prevail, the District must show that (1) the injunction is in the public interest, (2) there exists some cognizable danger of recurrent violation of the District's consumer laws, and (3) the District is likely to succeed on the merits in proving these violations. *See* ECF 1-3, Motion Exhibit 46, Transcript of Oral Ruling, *District of Columbia v. Dacul*, Case No. 2025-CAB-1228 at 17 (Okun, J.) (granting TRO based on these three factors). This Court should adhere to this substantive standard of D.C. law, given that federal courts in various jurisdictions have concluded that "[w]here federal courts are called upon to adjudicate a claim predicated on state law, under either its diversity or pendent claim jurisdiction, there appears to be no question that the ultimate issue of whether injunctive relief may issue must be decided under applicable state law." *Midland Funding LLC v. Brent*, No. 3:08CV1434, 2009 U.S. Dist. LEXIS 87266 at *4 (N.D. Ohio 2009); *see also Capital Tool & Mfg. Co. v. Maschinenfabrik Herkules*, 837 F.2d 171, 172 (4th Cir. 1988) ("There is no reason to exclude from *Erie* state substantive law regarding the issuance of final injunctions"); *accord Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship*, 2013 U.S. Dist. LEXIS 83075, *14 n.5 (D. Md. 2013); *Deer Valley Resort Co. v. Christy Sports, L.L.C.*, No. 2:07CV904, 2010 U.S. Dist. LEXIS 27518 at *11 (D. Utah 2010). For the purposes of *Erie* doctrine, D.C. is treated as a state. *Keefe Co. v. Americable Int'l, Inc.*, 219 F.3d 669, 670 (D.C. Cir. 2000). Even under the traditional federal common law factors, however, the District satisfies its burden.

### III. ARGUMENT

#### A. The District Has Met the *Dacul* PI Standard Applied in the D.C. Superior Court.

##### i. *The District's Relief Is in the Public Interest*

The evidence at the March 25, 2026 evidentiary hearing demonstrates that tenants living in Defendants' properties are subject to inhuman and illegal housing conditions. *See* ECF 1-2 (Index of Exhibits), 1-3 (Access to Exhibits); Ex. 1 at 37:1-48:11; 53:1-79:12; 91:1-106:25; 107:1-138:23; 139:1-154:8. In *District of Columbia v. Padilla, et al.*, a related matter in which Ali Razjooyan is also a Defendant and which also alleges CPPA violations stemming from illegal housing conditions, the Court found that "it is undeniably in the public interest that these defendants be enjoined from violating the CPPA." Motion Ex. 46, Transcript of Oral Ruling, Case No. 2024-CAB-5590 (D.C. Super. Ct. Sept. 19, 2024) (Kravitz, J.).

Failing to deny the illegal and horrific housing conditions, Defendants claim that because the public has an "interest in fair adjudication, accurate factfinding, lawful procedure, and avoiding government overreach" the District's Motion should be denied. Defendants' Opposition to Motion for Preliminary Injunction (Defs.' Opp.) at 11-12. Yet a fair, accurate, lawful procedure is exactly what has been offered to Defendants. The District presented copious evidence of the illegal conditions at properties they own. The District presented evidence that demonstrated Defendants Ali Razjooyan and Houri Razjooyan owned and controlled the properties and failed to abate these conditions. Defendants were given an opportunity to oppose the District's Motion almost three months after it was filed and still offer no evidence to dispute any of the illegal conditions at their properties.[5]

---

[5] In their response, Defendants now request an additional evidentiary hearing to "cross-examine declarants, challenge the District's exhibits, present property-specific evidence, present evidence of repair efforts and access issues, and present evidence distinguishing the roles of each Defendant." Defs.' Opp. at 13. Defendants are not entitled to a second bite at the evidentiary

## ii.   The Danger of Recurrence Is Certain

In making the requisite showing of a probable recurrent violation, "a defendant's past conduct is important evidence—perhaps the most important—in predicting his probable future conduct." *Mbakpuo v. Ekeanyanwu,* 738 A.2d 776, 782 (D.C. 1999) (citation modified). The District must only show "some cognizable danger of recurrent violation," at which point a defendant arguing against the injunction must then carry the "heavy burden" of "demonstrat[ing] that there is no reasonable expectation that the wrong will be repeated." *Id.* at 782-83 (citation modified). The District's Motion, and the evidence submitted at the evidentiary hearing, plainly show that a recurrence is certain. *See* Motion at 24-25; See ECF 1-2 (Index of Exhibits), 1-3 (Access to Exhibits); Ex. 1 at 37:1-48:11; 53:1-79:12; 91:1-106:25; 107:1-138:23; 139:1-154:8.

Defendants' Opposition offers no factual or legal argument regarding a danger of recurrence, conceding the District's well-supported argument. *See generally* Defs.' Opp.

## iii.   The District Is Likely to Succeed on the Merits of its CPPA Claims

The District is exceedingly likely to succeed on its CPPA claims. Violations of the District's Housing Code and Property Maintenance Code are also *per se* violations of the CPPA. *See* D.C. Code § 28-3904(dd) ("It shall be a violation of this Chapter for any person to . . . violate any provision of title 16 of the District of Columbia Municipal Regulations"); DCMR Title 16 § 3305 (incorporating Title 14, the Housing Code); DCMR Title 16 § 3309 (incorporating Title 12-G, the Property Maintenance Code). Accordingly, the voluminous evidence that the District presented establishing hundreds of violations of the Housing Code and

---

apple. Defendants chose not to attend the March 25, 2026 hearing, chose not to submit evidence opposing the District's Motion, and only now seek a second hearing to further delay a ruling and relief to tenants at their properties.

Property Maintenance Code is more than enough to establish that Ali Razjooyan and Houri Razjooyan violated the CPPA.

Defendants are incorrect that the District is not likely to succeed in its CPPA claims against Houri Razjooyan. Defs.' Opp at 6. While the District conceded at the March 25, 2026 evidentiary hearing that it did not have sufficient evidence to proceed against Eimon Razjooyan, Ex. 1 at 159:13-160:9, the District presented evidence that Houri Razjooyan continues to exercise ownership and control at 3615 B Street SE through her LLC, 3615 B Street SE LLC. Ex. 1 at 170:14-25. She even sought a "cashout" refinance of that property as recently as February 2026. Ex. 1 at 109:1-13. This evidence is sufficient to establish a likelihood of success on Houri Razjooyan's CPPA liability.

Defendants' contention that the District's CPPA claims are "overextended" because the claim "assumes every alleged housing code issue automatically establishes consumer fraud and supports broad business-wide relief," is unsupported by relevant law. Defs.' Opp at 6-7. As discussed above, the standard is much simpler: each violation of the District's Housing Code and Property Maintenance Code are also *per se* violations of the CPPA, and the evidence that the District presented establishing hundreds of violations of the Housing Code and Property Maintenance Code establish Defendant Ali Razjooyan and Houri Razjooyan's liability.

Finally, Defendants' argument that the District's Motion should be denied because RICO and False Claims theories cannot be the basis for a preliminary injunction, and the "District relies on RICO-style allegations," is irrelevant. Defs.' Opp at 8. The District is not seeking preliminary injunctive relief based on any statute other than the CPPA. Motion at 23-29.

**B.  The District's Relief Is Also Appropriate Under the Common-Law Factors.**

Even if the Court were to apply the federal common law factors under *Winter v. Natural*

*Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008), the District's Motion should be granted because the District has shown irreparable harm and that the balance of hardships favors the entry of preliminary relief.

> i.    *The District Has Shown Irreparable Harm*

Defendants appear to concede that the horrific conditions faced by Defendants' tenants give rise to irreparable harm. *See generally* Defs. Opp. This Court has recognized that the loss of safe housing cannot be adequately remedied by a post-judgment award of damages. *See Lee v. Christian Coal. of Am., Inc.*, 160 F. Supp. 2d 14, 32 (D.D.C. 2001) (finding that "the inability to pay utility bills or to feed one's children or the risk of being evicted from one's home, amounts to irreparable injury that money damages cannot remedy"); *see also Lattimore v. Nw. Coop. Homes Ass'n*, Civil Action No. 90-0049 (RCL), 1990 U.S. Dist. LEXIS 3285, at *20 (D.D.C. 1990) (tenant "facing homelessness and loss of her apartment" constitutes irreparable harm towards the tenant). Tenants at Defendants' properties face similar irreparable harm, when they have been forced into housing shelters due to lack of heat, face recurring sewage leaks, and are subject to massive rats that destroy their belongings and threaten their health. Ex. 1 at 139:1-154:8; 91:1-106:25; 107:1-138:23

Defendants' limited argument that the District has failed to show irreparable harm justifying its proposed limits on Defendants' ability to enter into new Housing Assistance Payment Contracts, new tenancies, or to alter their secured interest in existing properties or purchase new, similarly overlooks the evidentiary record. Defs.' Opp at 8-9. Defendants' CPPA violations are so vast, longstanding, and severe that the only way to prevent the continued infliction of irreparable harm on these and any future tenants is to address the *means* by which Defendants violate the CPPA, not just the illegal conditions that result. Thus, to prevent ongoing

and recurrent CPPA violations, the District seeks to halt Defendants' ability to freely enter into new tenancies, acquire new multi-family residential properties, or alter their secured interest in existing properties absent approval of this Court. Ex. 1 at 159:10-175:7. This requested relief ameliorates the type of irreparable harm contemplated in *Lee* and *Lattimore*, given that the District seeks to prevent any future tenants of Defendants from living in illegal and inhuman conditions.

Defendants' argument that restrictions on their ability to refinance or sell properties will prevent them from generating funds to finance repairs misreads the language of the order. Defs.' Opp at 8-9. The relief does not prevent Defendants from raising funds, it only requires Defendants to seek this Court's approval before doing so. This process will ensure funds raised by Defendants are actually allocated to repairs, not Defendants' pockets.

### ii. The Balance of Hardships Supports the District's Requested Relief

The balance of hardships favors the issuance of preliminary injunctive relief. Without the requested injunctive relief, the tenants currently living at properties controlled by the Razjooyans will continue to suffer illegal, inhumane housing conditions, the Defendants will remain free to rent to new tenants, who will also soon be subject to illegal conditions, and the Defendants will remain free to acquire new properties (or use their interest in existing properties to refinance or secure loans to purchase new properties) that will result in tenants subjected to these same types of illegal conditions.

Defendants' proposal that, instead of a court injunction, the District use "narrower tools"—tools which Defendants have blatantly ignored for years—is farcical. Defendants would have this Court believe that inspections of properties, notices of infraction, or seeking targeted orders will curtail their illegal conduct. In reality, Defendants have accrued more than 4,300

11

notices of infraction issued by DOB. Ex. 1 at 25:19-26:12. Despite repeated inspections and

citations by DOB, Defendants abated just 20% of the violations cited. *Id*. And despite repeated

inspections and citations, tenants at properties currently under their control live with sewage

leaks and "puppy"-sized rats that destroy their belongings. Ex. 1 at 91:1-106:25; 107:1-138:23.

Against this backdrop, any hardship resulting from Defendants' inability to lease apartments,

refinance, or buy or sell properties is far outweighed by the hardship suffered by tenants. While it

is no surprise that these recalcitrant Defendants propose to keep the status quo that has allowed

them to keep their residents living in squalor for so long, the purpose of the District's proposed

relief is tailored to afford relief to tenants and bring a stop to Defendants' ongoing violations of

the CPPA.

### C. Defendants' Remaining Arguments Do Not Prevent This Court From Granting Injunctive Relief.

#### i. The District's Requested Relief Is Not Premature

Defendants argue that the District's requested relief would function as a "partial final

judgment" and should not be entered because it is based on "untested allegations." Defs.' Opp at

5. This is legally and factually incorrect. First, the CPPA explicitly provides that the Attorney

General make seek "temporary or permanent" injunctive relief to halt violations of the CPPA

including "requiring the violator to take affirmative action." D.C. Code § 28-3909(a); *see* Motion

Ex. 46, Transcript of Oral Ruling, Case No. 2024-CAB-5590 (D.C. Super. Ct. Sept. 19, 2024)

(Kravitz, J.) (granting preliminary injunctive relief against defendants who had violated the

CPPA to prevent harm to tenants from living in dangerous conditions). Second, the federal rules

explicitly provide for preliminary relief. Fed. R. Civ. P. 65(a).

Furthermore, the District supplied voluminous evidence, both with its Motion for

Preliminary Injunction and at the March 25th evidentiary hearing, of Defendants' violations of

the CPPA. Tenants and inspectors testified about the present dangerous conditions at each property. ECF 1-2 (Index of Exhibits), 1-3 (Access to Exhibits); Ex. 1 at 37:1-48:11; 53:1-79:12; 91:1-106:25; 107:1-138:23; 139:1-154:8. For three months, Defendants have declined to rebut this evidentiary record.

### ii. The Injunction Is Tailored to Defendants' Conduct

Defendants incorrectly claim that the District's proposed relief is "overbroad" under Fed. R. Civ. P. 65(d) because it seeks to bind "shell companies," "straw purchasers," and "affiliates". Defs.' Opp at 9-10. The plain language of the District's proposed order directly contradicts this assertion. The order is directed only at Defendants and makes no mention of any other individual. The District's proposed order is therefore plainly in compliance with Fed. R. Civ. P. 65(d).

### iii. The Injunction Is Not an "End Run Around Ordinary Civil Procedure"

Defendants claim, without citation to any statute, rule, or caselaw, that the District's proposed order is an "improper" end run around ordinary civil procedure because it "is a prejudgment restraint on property rights" to secure "a future money judgment." Defs.' Opp at 10. But the District is not seeking to restrain Defendants' conduct to obtain a money judgment, it is seeking to restrain Defendants' conduct to prevent their continued violations of the CPPA. *See* D.C. Code § 28-3909(a) (CPPA specifically authorizes the Attorney General to seek temporary injunctions "if . . .[it] has reason to believe that any person is using or intends to use any method, act, or practice in violation of section . . . 28-3904."). The CPPA expressly allows for preventative preliminary injunctive relief, and Defendants offer no evidence to support their assertion to the contrary.

**CONCLUSION**

For the foregoing reasons, the District respectfully requests that the Court grant the

District's Motion for Preliminary Injunction and enter the attached proposed order.

Dated: June 4, 2026

Respectfully submitted,
BRIAN L. SCHWALB
Attorney General for the District of Columbia

COTY MONTAG
Deputy Attorney General
Public Advocacy Division

JOANNA K. WASIK
Chief, Housing and Environmental Justice Section
MICHAEL S. MAURER
Assistant Chief, Housing and Environmental Justice
Section

*/s/ Laura C. Beckerman*
LAURA C. BECKERMAN [1008120]
Senior Trial Counsel
Public Advocacy Division
Laura.Beckerman@dc.gov
(202) 655-7906

*/s/ Matthew Meyer*
MATTHEW MEYER [1045084]
Assistant Attorney General
400 6th Street NW, 10th Floor
Washington, DC 20001
Matthew.Meyer2@dc.gov
(202) 394-9384

*Attorneys for the District of Columbia*

14

## **Certificate of Service**

I certify that, June 4, 2026, service of this filing was completed through the Court's

CM/ECF system on all parties so registered and that I caused a copy of this filing to be served

via USPS First Class mail as follows:

Ali Razjooyan
115 Bytham Ridge Ln.
Potomac, MD 20854

Houri Razjooyan
117 Bytham Ridge Ln.
Potomac, MD 20854

Eimon Razjooyan
117 Bytham Ridge Ln.
Potomac, MD 20854

*/s/ Matthew W. Meyer*
MATTHEW W. MEYER