**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DISTRICT OF COLUMBIA,<br><br>*Plaintiff*,<br><br>v.<br><br>ALI RAZJOOYAN, et al.,<br><br>*Defendants*. | No. 1:26-cv-01210-CRC |

**PLAINTIFF THE DISTRICT OF COLUMBIA'S**
**STATEMENT OF OPPOSING POINTS AND AUTHORITIES IN OPPOSITION TO**
**DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS


I. FACTS ALLEGED IN THE COMPLAINT ..... 1
II. LEGAL STANDARD ..... 6
III. ARGUMENT ..... 7
A. The District Adequately Pleads its RICO Claims. ..... 8
i. The District Adequately Pleads that Defendants Engaged in Racketeering Activity, in violation of 18 U.S.C. § 1962(c). ..... 8
ii. The District Adequately Pleads Each Defendant's Participation in the RICO Enterprise, as required under 18 U.S.C. § 1962(c). ..... 14
iii. The District Adequately Pleads Defendants' Intent. ..... 18
iv. The District Adequately Pleads Proximate Cause Between Defendants' Racketeering Activity and the Harm to the District. ..... 19
v. The District Adequately Pleads that Defendants' Investment of Racketeering Income Harmed the District, in Violation of 18 U.S.C. § 1962(a). ..... 20
vi. The District Adequately Pleads that Defendants Used Racketeering Income to Operate the Enterprise. ..... 21
B. The District Adequately Pleads that Defendants Received over $16 Million in Fraudulent Housing Subsidy Payments, in Violation of the FCA. ..... 22
C. The District Adequately Pleads that Defendants Sam Razjooyan and Houri Razjooyan Avoided Repaying Housing Subsidy Funds, in Violation of the FCA. ..... 23
D. The District Adequately Pleads Its CPPA Claims Against All Defendants. ..... 24
IV. CONCLUSION ..... 26

This action arises out of Defendants Ali ("Sam") Razjooyan's, Houri Razjooyan's, and Eimon "Ray" Razjooyan's (collectively, "Defendants") [1] Ponzi-like scheme to acquire and maintain control of dozens of multi-family residential properties by defrauding lenders and the District's housing subsidy programs. The District alleges that Defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO"), the District's False Claims Act, D.C. Code §§ 2-381.01, *et seq*. ("FCA"), and the Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq*. ("CPPA"). Because of Defendants' illegal conduct, the District was defrauded out of over $16 million, District residents have been left to live in illegal, inhumane conditions, and the District has had to spend significant funds in response costs to address the emergencies created by Defendants' illegal scheme. Defendants now bring cursory motions to dismiss, making threadbare assertions that are unsupported by case law and ignore the specific facts alleged in the Complaint. In short, the District, through its well-pled, detailed Complaint, plausibly alleges the violations at issue and, where required, pleads those facts with particularity. Accordingly, the Court should deny Defendants' Motions to Dismiss.

## I. FACTS ALLEGED IN THE COMPLAINT

Since 2015, Defendants, individually or through their RICO Enterprise, have owned or controlled over 40 multi-family residential properties, comprising over 70 buildings and over 600 rental units housing hundreds of tenants in the District. ECF 1-17, Complaint ¶¶ 11, 41, 44. To gain the funds to acquire properties, maintain control over existing properties, and enrich themselves, Defendants and Enterprise participants have made false promises to perform capital

[1] The District refers to Ali "Sam" Razjooyan as Sam Razjooyan for the purposes of this filing because that is how he has self-identified in court filings in this case. The District refers to Eimon "Ray" Razjooyan as Eimon Razjooyan for the purposes of this filing because that is how he has self-identified in court filings in this case. The District referred to Eimon Razjooyan as "Ray Razjooyan" in its Complaint.

improvements and submitted fake rent rolls, unsupportable appraisals, and other fraudulent documents to lenders and the District. *Id.* ¶¶ 3-7, 6, 41, 69-73, 191-93, 274-78; ECF 56-3, Appendix C (Razjooyan Properties Loan Details).[2] The purpose of these misrepresentations was to make the properties appear much more valuable than they actually were in order to take out loans based on those fraudulently inflated valuations, including by promising to bring distressed properties up to code so that they could be rented to tenants with District housing subsidies. *Id.* Defendants then reinvested their fraudulently obtained funds to retain, refinance, and acquire new properties. Complaint ¶¶ 48-56, 68-77. Defendants also defrauded the District's housing subsidy programs out of over $16 million and left tenants to live in illegal, inhumane conditions. *Id.* ¶¶ 8-13, 36-40, 232-42, ECF 56-1, Appendix A (Razjooyan Properties and Subsidy Information), ECF 56-4, Appendix D (Razjooyan Properties and Consumer Protection Violations). Defendants Sam Razjooyan and Houri Razjooyan, through single-asset LLCs under their control, continued to unlawfully collect and retain subsidy funds for LLCs that were under receivership or bankruptcy trusteeship. Complaint ¶¶ 246-50, 279-287, ECF 56-2, Appendix B (Razjooyan Properties in Receivership and Bankruptcy Trusteeship).

The District alleges the overall scheme to defraud: Defendants "used the mails and wires to provide banks and other lenders with fake rent rolls, misleading appraisals and valuations, and scores of documents containing false representations about the current or prospective rental income at these properties, the current or projected number of tenants at these properties, the

---

[2] Upon removal the District's Complaint was docketed as ECF 1-17. However, the appendices that the District had filed with its Complaint in the DC Superior Court were not docketed with this Court at that time. The District has since docketed them with the Court as follows: ECF 56-1 (Appendix A, Razjooyan Properties and Subsidy Information), 56-2 (Appendix B, Razjooyan Properties in Receivership and Bankruptcy Trusteeship), 56-3 (Appendix C, Razjooyan Properties Loan Details), 56-4 (Appendix D, Razjooyan Properties and Consumer Protection Violations).

current or projected number of units at these properties, and plans to develop, renovate, or rehabilitate these properties." Complaint ¶ 325. The District also alleges that Defendants induced the District to enter into Housing Assistance Payment (HAP) contracts based on promises of habitability the Defendants "never intended to keep." *Id.* ¶ 328; Fed. R. Civ. P. 9(b). In addition, the Complaint explains, step-by-step, how the Defendants implemented their scheme at six of the Enterprise's properties: 4559 Benning Road SE (Complaint ¶¶ 78-106), 1644 W Street SE (*Id.* ¶¶ 107-122), 3639 MLK Avenue SE (*Id.* ¶¶ 123-140), 2844 Langston Place SE (*Id.* ¶¶ 141-157), 700 and 704 51st Street NE (*Id.* ¶¶ 159-174), and 112 Wilmington Place SE (*Id.* ¶¶ 175-189), including identifying the specific representations made, lenders defrauded, loan and housing subsidy amounts received, and illegal housing conditions at each. In addition, for each of the more than 40 properties involved in the Defendants' Enterprise, the District details the loan dates and amounts, the signatories, the housing subsidy amounts, and the housing code violations cited. Complaint ¶¶ 191-192, 195-228, 241, Appendices A, C, D.

Finally, the District details how, in an attempt to retain control of their Enterprise and stave off lender foreclosures, Defendants resorted to obstruction of justice in bankruptcy proceedings. *Id.* ¶¶ 251-278, 327. The District specifically alleges that the debtor LLCs, including ones owned by each of the three Defendants, submitted false proofs of insurance to the US Trustee's Office and made other false statements and misrepresentations on their bankruptcy filings. Complaint ¶¶ 261-62. The District also details how the Defendants attempted to broker insider sales of the properties at inflated prices and attempted to use the bankruptcy proceedings to facilitate a stock pump-and-dump scheme to allow Defendants to cash out their fraudulently inflated equity in the properties. *Id.* ¶¶ 256-57, 266-273.

The District specifically pleads the involvement of each of the three Defendants. The District identifies Sam Razjooyan at the head of the illegal enterprise. Complaint ¶ 45. He determines which properties to purchase, communicates with lenders, recruits straw purchasers, directs illegal construction, and directs and controls the Enterprise's property management companies. *Id.* ¶ 45, 51-53, 57-63, 69. Sam Razjooyan created several management companies that he has used to lease units to tenants with housing subsidies. *Id.* ¶¶ 51-53. To receive housing subsidy payments, Sam Razjooyan, Eimon Razjooyan, or employees of Enterprise property management companies affirmed to District government agencies that the properties were habitable and would be kept habitable. Complaint ¶ 73, Appendix A. The Complaint also contains detailed allegations demonstrating how Sam Razjooyan obtained inflated loans at 4559 Benning Road SE (*Id.* ¶¶ 79-81, 83-85, 95-106), 1644 W Street SE (*Id.* ¶¶ 108-110), 3639 MLK Avenue SE (*Id.* ¶¶ 124-28), 2844 Langston Place SE (*Id.* ¶¶ 142-47), 700 and 704 51st Street NE (*Id.* ¶¶ 159-61), 112 Wilmington Place SE (*Id.* ¶¶ 176-80); *see also* Appendix C.

The Complaint further alleges that Sam Razjooyan has subjected tenants at these properties to illegal housing conditions and has allowed those conditions to go unaddressed for years. *Id.* ¶¶ 87-94, 112-20, 129-40, 149-57, 163-74, 181-89, 194-228, Appendix D. The Complaint identifies each of the properties at which Sam Razjooyan fraudulently induced the District to enter into HAP contracts despite knowing that his properties were in violation of housing standards. *Id.* ¶¶ 87, 91, 112, 119, 129, 139, 149, 156, 163, 170, 181, 187, 229-241, Appendix A, Appendix D. It also identifies the multiple properties at which he continued to receive housing subsidy payments despite knowing that he was not legally entitled to receive these payments, and the amount of those payments. *Id.* ¶¶ 243-50, 281-287, Appendix B (identifying the 24 properties where Mr. Razjooyan collected $806,002 in post-receivership or bankruptcy trusteeship housing subsidy payments).

Houri Razjooyan controls several of the Enterprise's LLCs and has obtained fraudulent loans from lenders and housing subsidy payments from the District. Complaint ¶ 46, Appendix A, Appendix C. The Complaint details how she obtained inflated loans at 2844 Langston Place SE (Complaint ¶¶ 141-157) and has allowed tenants at that property to live in illegal housing conditions for years (*Id.* ¶¶ 211-214). The District further alleges that Houri Razjooyan has subjected tenants at 2850 Langston Place SE, 2908 Langston Place SE, and 3615 B Street SE to deplorable conditions, including trash in common areas, rodent infestations, and fire safety violations. *Id.* ¶¶ 215-227, Appendix D. The Complaint identifies the six properties at which Houri Razjooyan fraudulently induced the District to enter into HAP contracts despite knowing that her properties were in violation of housing standards, as well as the total payments made. Complaint ¶¶ 229-241, Appendix A, Appendix D. It also identifies the multiple properties at which she continued to receive housing subsidy payments despite knowing that she was not legally entitled to receive them. Complaint ¶¶ 281-287, Appendix B.

Eimon Razjooyan directed employees at the Enterprise's property management companies, applied for licenses on behalf of Enterprise single-asset LLCs, performed illegal construction at Enterprise properties, and controlled an Enterprise single-asset LLC. He hired employees to work at US Realty, a company the Enterprise used to lease units to tenants with housing subsides. *Id.* ¶ 53. He also owns Legacy Construction, which the Enterprise used to perform illegal, unsafe, and unpermitted construction. *Id.* ¶ 54. To allow the Enterprise to obtain fraudulent housing subsidy payments, he affirmed that the properties were habitable and would be kept habitable. *Id.* ¶ 73. He, or an employee working at his or Sam Razjooyan's direction, signed at least 36 HAP contracts to rent to tenants with subsidies at 4559 Benning Rd SE, 15 HAP contracts at 1644, 1650, and 1656 W Street, 12 HAP contracts at 3639 MLK Avenue SE, 11 HAP contracts at 2844 Langston Place,

43 HAP contracts at 700 and 704 51st Street NE, and 9 HAP contracts at 112 Wilmington Place SE. *Id.* ¶¶ 87, 112, 129, 149, 163, 181. The Complaint identifies the 19 total properties at which Eimon Razjooyan fraudulently induced the District to enter into HAP contracts despite knowing that his properties were in violation of housing standards. *Id.* ¶ 241, Appendix A, Appendix D.

This Enterprise proved to be lucrative for each of the Defendants, with Sam Razjooyan extracting at least $1,400,000 from Enterprise LLCs into his personal bank accounts, Houri Razjooyan extracting at least $400,000 into her personal bank accounts, and Eimon Razjooyan extracting at least $170,000 into her personal bank accounts. Complaint ¶¶ 45-47.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief may be granted, the District need only plead "a short and plain statement of the claim showing that the [District] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defendants then must show that the complaint is not "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). To be plausible, a complaint need only "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged;" it need not include "'[d]etailed factual allegations.'" *Iqbal*, 556 U.S. at 663, citing *Twombly*, 550 U.S. at 555-56.

For allegations of fraud, "a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind," if alleged, "may be alleged generally." Fed. R. Civ. P. 9(b). "[T]he point of Rule 9(b) is to ensure that there is sufficient substance to the allegations to both afford the defendant to opportunity to prepare a response and to warrant further judicial process." *U.S. ex rel. Heath v. AT&T Inc.*, 791 F.3d 112, 125 (D.C. Cir. 2015). A plaintiff may satisfy the particularity requirement by "stat[ing] the 'time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud.'" *Firestone v.*

*Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996) (internal quotations omitted). But "'Rule 9(b)'s ultimate meaning is context-specific'" and "does not inflexibly dictate adherence to a preordained checklist of 'must have' allegations." *Heath*, 791 F.3d at 125 (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009)).

## III. ARGUMENT

The District's Complaint, the product of a multi-year investigation into the Razjooyan RICO Enterprise, which spans 369 paragraphs and four detailed appendices, tells the story of Defendants' illegal conduct and the resulting harm to the District and its citizens in detail. Far from making conclusory allegations, the District substantiates its legal claims with detailed factual pleadings, pled with particularity where necessary, that more than satisfy the federal pleading standards. Defendants' Motions to Dismiss (ECF 44, 46, 48) make bare assertions that the District has failed to plead each of its claims. The District addresses and dispatches with each of these arguments in detail below.

First, the District adequately pleads, with the level of particularity required by Rule 8(a)(2) and, where applicable, Rule 9(b), that Defendants engaged in racketeering activity, in violation of RICO under 18 U.S.C. § 1962(c). Specifically, the District pleads that each Defendant has intentionally engaged in mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and obstruction of justice (18 U.S.C. § 1512(c)) and participates in the racketeering Enterprise, and that these racketeering activities have proximately caused harm to the District. The District also adequately pleads that Defendants invested racketeering income into their Enterprise in violation of RICO under 18 U.S.C. § 1962(a), and that this investment harmed the District.

Next, the District adequately pleads that Defendants violated the FCA by obtaining over $16 million in fraudulent housing subsidy payments (D.C. Code § 2-381.02(a)(1), (2)) and, as to

Sam Razjooyan and Houri Razjooyan, by failing to repay housing subsidy funds when legally required to do so (D.C. Code § 2-381.02(a)(6), (9)). Finally, the District adequately pleads that Defendants violated the CPPA by subjecting tenants to illegal housing conditions that violate the District's Property Maintenance Code and by making misrepresentations to tenants about the habitability of the properties. D.C. Code § 28-3904(a), (b). Indeed, the Court already found that the District is likely to succeed on the merits of its CPPA claims. ECF 37 at 17. Accordingly, the Court should deny the Motions to Dismiss.

**A. The District Adequately Pleads its RICO Claims.**

The District alleges that Defendants violated RICO both by (1) participating in the conduct of the Enterprise's affairs through a pattern of racketeering activity—namely mail fraud, wire fraud, bank fraud, and obstruction of justice, in violation of 18 U.S.C. § 1962(c), and (2) by investing income derived from a pattern of racketeering activity—mail fraud, wire fraud, and bank fraud—into the Enterprise, in violation of 18 U.S.C. § 1962(a).

Defendants argue that the District did not adequately plead (1) facts to support the allegations of mail fraud, wire fraud, bank fraud, or obstruction of justice, (2) each Defendant's participation in the conduct of the Enterprise, (3) Defendants' fraudulent intent, (4) that the RICO violation proximately caused the District's harm, and (5) that the investment of racketeering income caused harm to the District. ECF 44, Sam Razjooyan Motion to Dismiss at 2-3; ECF 46, Houri Razjooyan Motion to Dismiss at 1-2; ECF 48, Eimon Razjooyan Motion to Dismiss at 1-2. These arguments are meritless.

**i. The District Adequately Pleads that Defendants Engaged in Racketeering Activity, in violation of 18 U.S.C. § 1962(c).**

The District adequately pleads that each Defendant engaged in mail fraud (18 U.S.C. §1341), wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), and obstruction of justice

(18 U.S.C. § 1512(c)), each of which are predicate offenses that constitute racketeering activity. 18 U.S.C. § 1961(1) (defining "racketeering" for purposes of the RICO statute).

**Mail, Wire, and Bank Fraud.** Mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) require proof of "(1) a scheme to defraud; and (2) the use of an interstate [mail or] wire communication to further the scheme." *United States v. Maxwell*, 920 F.2d 1028, 1035, 1035 n.8 (D.C. Cir. 1990) ("Because the elements that must be proved under the wire fraud statute, 18 U.S.C. § 1343, and under the mail fraud statute, 18 U.S.C. § 1341, are identical, we rely upon cases construing both statutes in the discussion that follows."); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1116 (D.C. Cir. 2009); *Ctr. for Immigr. Stud. v. Cohen*, 410 F. Supp. 3d 183, 189 (D.D.C. 2019), *aff'd*, *Ctr. for Immigration Studies v. Cohen*, 806 Fed. Appx. 7 (D.C. Cir. 2020). The interstate wire communication must include a misrepresentation or disclosure intended "to deprive the person to whom the duty is owed of some legally significant benefit," *United States v. Lemire*, 720 F.2d 1327, 1335 (D.C. Cir. 1983), reaffirmed in *United States v. DeFries*, 129 F.3d 1293, 1306 (D.C. Cir. 1997), "to the advantage of the misleader and the disadvantage of the misled." *Philip Morris*, 566 F.3d at 1128 (quoting *Emery v. Am. Gen. Fin., Inc.*, 71 F.3d 1343, 1348 (7th Cir. 1995)); *Ctr. for Immigr. Stud.*, 410 F. Supp. 3d at 189. Similarly, bank fraud occurs when a person knowingly executes or attempts to execute a scheme (1) to defraud a financial institution or (2) to obtain money or other property owned or controlled by a financial institution by fraudulent means. 18 U.S.C. § 1344. The key element is a scheme to defraud, whether or not the financial institution ultimately suffers financial loss. *Shaw v. United States*, 580 U.S. 63, 67 (2016).

As these predicate acts sound in fraud, the District pleads them with particularity, as required by Rule 9(b). In addition to alleging the overall scheme (Complaint ¶ 325), the District also alleges the details of each loan transaction, as well as the HAP contracts, with regard to the

six properties detailed in the Complaint: 4559 Benning Road SE (*Id.* ¶¶ 78-106), 1644 W Street SE (*Id.* ¶¶ 107-122), 3639 MLK Avenue SE (*Id.* ¶¶ 123-140), 2844 Langston Place SE (*Id.* ¶¶ 141-157), 700 and 704 51st Street NE (*Id.* ¶¶ 159-174), and 112 Wilmington Place SE *(Id.* ¶¶ 175-189), Appendix A. Then, for each of the more than 40 properties involved in the Defendants' Enterprise, the District details the loan dates and amounts, the signatories, the housing subsidy amounts, and the housing code violations cited. *Id.* ¶¶ 191-192, 195-228, 241, Appendices A, C, D.

For example, with regard to one of the loan transactions concerning 4559 Benning Rd SE, the District alleges: "[i]n April 2022, Sam Razjooyan fraudulently secured a $6,627,234 loan from Bank of Clarke to refinance the property" by providing Bank of Clarke a fake rent roll, in which Sam Razjooyan "falsely indicated the property was 100% occupied and was generating $69,000 a month in rental income" when in reality the property was "only generating about $40,000 in monthly rental income due to vacancies and because the rent amounts listed on the rent rolls were not accurate." Complaint ¶¶ 83-84. The allegations of the specific loan transaction, the false statements that induced the loan (fake rent roll, false rental income representations) and the amount of loan that resulted meet the pleading requirements for mail fraud, wire fraud, and bank fraud. 18 U.S.C. §§ 1341, 1343, 1344; *see Suarez v. Compass Coffee LLC*, Case No. 25-89, 2025 WL 3062798 at *12 (D.D.C. Nov. 3, 2025) (finding fraud claim to be plausibly alleged with particularity where plaintiff identified multiple false statements, the dates they were made, and the content they included). District also alleges that Defendants induced the District to enter into HAP contracts based on promises of habitability the Defendants "never intended to keep"—alleging fraudulent intent, which may be pled generally. Complaint ¶ 328; Fed. R. Civ. P. 9(b).

The District pleads similarly detailed allegations regarding Houri Razjooyan's involvement in the loans for 2844 Langston Place SE, acquired in February 2022:

> The Enterprise paid the purchase price of $1,633,333 with an initial loan of $2,167,939 from LYNK Investments, LLC. In the application materials that Houri Razjooyan submitted to obtain the loan from LYNK Investments, she stated that she had $1,300,000 in liquid assets and a net worth of $12 million. She further claimed that the property would be worth $4,800,000 following the renovations and improvements that she and Padilla promised. Upon information and belief, Houri Razjooyan secured the loan from LYNK Investments, based in significant part on false promises that she would use the bulk of those funds to make capital improvements in the property to bring it up to code and allow it to be legally rented to tenants with housing subsidies.

Complaint ¶¶ 142-145. Then, regarding another loan transaction at 2844 Langston Place SE, the District alleges Houri Razjooyan's involvement in refinancing that loan, whose funds were deposited into a bank account that she co-controlled, based on an even higher valuation, despite the deteriorating conditions at the property. *Id.* ¶¶ 146-144.

Regarding Eimon Razjooyan, the District alleges that he "co-owns and controls Legacy Construction LLC, which performs illegal construction for the Enterprise" and that he "directs and pays employees at the Enterprise's unlicensed property management companies." *Id.* ¶ 47. The District then makes specific allegations regarding the false statements that were made by the employees whom he supervises and directs, often regarding the very illegal construction in which his company engaged. For example, regarding 700 and 704 51st St NE, the District alleges that "Sam Razjooyan or an employee working at his or Eimon Razjooyan's direction signed at least 43 HAP contracts to rent to tenants with subsidies." *Id.* ¶ 163. Each contract contained an affirmation that "the property complied with H[ousing] Q[uality] S[tandards] and DCHA habitability standards and would be kept up to these standards." *Id.* The District then alleges that the property was, in fact, in deplorable condition and that an illegal two-story addition rendered it unstable and at risk of collapse. *Id.* ¶¶ 165-172. The District further alleges the exact amount of illegal subsidy payments obtained at each property. ECF 56-1, Appendix A. The District also alleges Eimon

Razjooyan's involvement in fraudulently inducing loans for 4263 6th Street SE from a financial institution and the details of those loans in Appendix C. Complaint ¶ 47, Appendix C.

Taken together with the allegations regarding the overall scheme and the detailed information in the Appendices, the District alleges a scheme to, through mail and wire fraud, Complaint ¶ 325, defraud financial institutions and the District by providing false information to obtain inflated acquisition and refinance loans and undeserved housing subsidies, and the District alleges the use of interstate wire communication, including email, to further this scheme.[3] *See Philip Morris*, 566 F.3d at 1116 (mail and wire fraud are racketeering acts where they are in furtherance of the scheme to defraud). The blatantly false information included in these communications, including false promises of using loan funds to invest in capital improvements, false representations of habitability, impersonation of another party, and rent rolls listing fake tenants, indicates an intent to dupe banks and financial institutions into providing loans under false pretenses and induce the District to enter into HAP contracts. *See Lemire*, 720 F.2d at 1335 (elements of wire fraud); *Philip Morris*, 566 F.3d at 1128 (finding fraud based on a "campaign of statements intended to mislead"). Defendants' misrepresentations to financial institutions, specifically, constitute a knowing attempt to defraud these institutions and obtain money those institutions own or control by fraudulent means. 18 U.S.C. § 1344; *Shaw*, 580 U.S. at 67. Accordingly, the District's detailed pleadings contain the substance necessary to afford defendants

[3] The District also specifically alleges the interstate nature of the scheme, including the address of each of the Properties (Complaint at ¶ 191), that the Defendants reside in Maryland (Complaint at ¶¶ 20-22), the name of each lender (ECF 56-3, Appendix C (listing the lender for each loan)), and that the Defendants used interstate commerce to obtain loans from out-of-state lenders (Complaint at ¶ 316).

the opportunity to respond and to show that further judicial process is warranted, thus satisfying the requirements of Rule 9(b). *See U.S. ex rel. Heath*, 791 F.3d at 125.

**Obstruction of Justice.** The District pleads that Defendants obstructed justice by corruptly altering or concealing, or attempting to alter or conceal, records or documents in a federal bankruptcy proceeding, with the intent to impair the use of those records or documents in the proceeding and to otherwise obstruct the proceeding, in violation of 18 U.S.C. §1512(c)(1), (2). Complaint ¶ 327. Subsections (c)(1) and (c)(2) work in tandem, with subsection (c)(2) "ensuring that liability is still imposed for impairing the availability or integrity of *other* things used in an official proceeding beyond the record[s], document[s], or other object[s] enumerated in (c)(1), such as witness testimony or intangible information." *Fischer v. United States*, 603 U.S. 480, 491 (2024) (internal quotation omitted). As this claim does not sound in fraud, pleadings are reviewed under Rule 8(a)(2), and the Complaint need only "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555-56).

Here, the District alleges that the Enterprise placed 19 single-asset LLCs, each of which owned a multi-family residential property, into bankruptcy in April and May 2024 to halt TD Bank's impending foreclosures on the properties. Complaint ¶ 251. While all 19 LLCs were controlled by the Enterprise, four LLCs were specifically owned by Houri Razjooyan, one by Eimon Razjooyan, and three by Sam Razjooyan. *Id.* ¶ 252. Defendants' LLCs, as well as several owned by other Enterprise participants, authorized Sam Razjooyan to file bankruptcy petitions on their behalf, and he proceeded to act as the debtor representative in the bankruptcy proceedings. *Id.* ¶¶ 254-255. The District alleges that the Enterprise initiated and perpetuated the bankruptcies with the fraudulent intent of "broker[ing] insider sales of the properties at inflated prices to keep

the properties under Enterprise control" and that it "carried out these bankruptcies by fraudulent means by making a litany of false submissions to the Bankruptcy Court." *Id.* ¶¶ 256-57. The District also specifically alleges that Defendants further acted corruptly by attempting to use the bankruptcy process to effectuate a stock pump-and-dump scheme that would have allowed them to take advantage of the fraudulently inflated book values of the properties and cash out. *Id.* ¶¶ 266-273.

The District then details the numerous ways in which the bankruptcy debtors, owned by each of the Defendants, and represented by Sam Razjooyan, submitted false or forged documents, omitted required information to obscure insider transactions, attempted to conceal insider sales, and gave false witness testimony, all in an attempt to obstruct proceedings in federal Bankruptcy Court. *See id*. ¶¶ 259-265. Perhaps most critically, Defendants' LLCs submitted forged proofs of insurance to the Office of the US Trustee, certificates required as part of the bankruptcy proceeding, which the Bankruptcy Court later described as "exhibit[ing] extreme evidence of fraud [and] manipulation." *Id.* ¶¶ 261-262. In addition, LLCs owned by Sam Razjooyan and Houri Razjooyan failed to disclose tens of thousands of dollars in insider transfers to their personal bank accounts and to an account controlled by Eimon Razjooyan, transfers that they were not allowed to make without leave of the Bankruptcy Court. *Id.* ¶¶ 264, 327. Accordingly, the District pleads facts that plausibly allege that Defendants acted corruptly to alter or conceal records and witness testimony in a bankruptcy proceeding, constituting obstruction of justice. *See Fisher*, 603 U.S. at 491.

**ii. The District Adequately Pleads Each Defendant's Participation in the RICO Enterprise, as required under 18 U.S.C. § 1962(c).**

Defendants state that the District did not adequately plead that Defendants participated in the Enterprise. Not so. As an initial matter, only Count I, brought under 18 U.S.C. § 1962(c), requires the District to plead facts regarding participation. Count II, which is brought under 18

U.S.C. § 1962(a), has no such requirement. *Compare* 18 U.S.C. § 1962(a) ("It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income"), *with* 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or *participate*, directly or indirectly, in the conduct of such enterprise's affairs") (emphasis added); *see Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

The Supreme Court applies an "operation or management" test to determine whether a defendant has participated in the conduct of the enterprise's affairs, pursuant to 18 U.S.C. § 1962(c). *Reves v. Ernst & Young*, 507 U.S. at 179. However, "operation or management" does not require a "formal position in the enterprise," and it can include "lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 179, 184. Indeed, "[a] defendant may satisfy this test even if he did not have significant control over the enterprise's affairs." *United States v. Philip Morris USA Inc*, 449 F. Supp. 2d 1, 876[4] (D.D.C. 2006), *order clarified by* 477 F. Supp. 2d 191 (D.D.C. 2007). *Compare Harpole Architects, P.C. v. Barlow*, 668 F. Supp. 2d 68, 75–76 (D.D.C. 2009) (finding no operation or management where defendant was a bookkeeper and administrative assistant whose role was ministerial), *with Philip Morris*, 449 F. Supp. 2d at 876. To be held liable under § 1962(c), a defendant "need only intentionally perform acts that are related to, and further [the enterprise's] operation or management." *Philip Morris*, 449 F. Supp. 2d at 876 (citing *United States v. Weiner*, 3 F.3d 17, 24 (1st Cir. 1993) (upholding jury instructions stating that "the terms 'conduct' and 'participate' in the conduct of the affairs of

[4] Due to the length of this opinion, it spans six entries on Westlaw. The portions cited in this brief are available at 2006 WL 2380650.

the enterprise include the intentional and deliberate performance of acts, functions or duties which are related to the operation or management of the enterprise.”)).

Here, the District alleges extensive facts showing that all three Defendants fulfill the operation and management test. The Complaint lays out in copious detail how Sam Razjooyan has played a pivotal role in “making and implementing decisions in furtherance of the Enterprise’s activities and purposes.” *Philip Morris*, 449 F. Supp. 2d at 876. Sam Razjooyan heads the Enterprise, determining which properties it will purchase and communicating with lenders to obtain fraudulent loans. Complaint ¶ 45. The District details how Sam Razjooyan recruited other members into the Enterprise (*Id.* ¶¶ 57-63), identified the distressed multi-family properties that brought in the fraudulent loan money and housing subsidy payments (*Id.* ¶ 69), submitted fake rent rolls to lenders (*Id.* ¶¶ 99-100, 178-79), and procured loans based on forged documents and false promises (*Id.* ¶¶ 191-192). This is the core work of the Enterprise. The District also alleges facts showing that Houri Razjooyan and Eimon Razjooyan satisfy the operation and management test. A defendant need not have, and the District need not plead, Sam Razjooyan-level of conduct and control to state a claim for liability under § 1962(c). Rather, these “lower rung” participants acted, either on their own or under the direction of Sam Razjooyan, to intentionally perform acts related to or in furtherance of the Enterprise’s operation or management. *See Philip Morris*, 449 F. Supp. 2d at 876 (“Numerous courts have held that *Reves* is satisfied by evidence that lower-rung members of an enterprise implemented decisions directed by those higher up the ladder in the enterprise or committed racketeering acts which furthered the basic goals of the enterprise at the direction of other members of the enterprise.”).

Here, the District alleges that Houri Razjooyan controlled several Enterprise LLCs that obtained fraudulent loans and housing subsidy payments. Complaint ¶ 46. The District details how

Houri Razjooyan took out inflated loans against 2844 Langston Place SE, *id.* ¶¶ 141-157, and the District identifies six properties controlled wholly or in part by Houri Razjooyan that submitted false certificates to the District to unlawfully obtain housing subsidy payments, *id.* ¶¶ 229-241. This activity—controlling LLCs, taking out ever-increasing loans on Enterprise properties, and obtaining housing subsidy payments—is precisely the activity that is central to the management and operation of the Enterprise.

Similarly, regarding Eimon Razjooyan, the District alleges that he controlled one of the Enterprise LLCs, applied for District licenses on behalf of at least 13 Enterprise companies, and co-owned the entity that performs illegal construction at Enterprise properties. *Id.* ¶¶ 47, 54, 108. In addition, he supervised and paid the Enterprise employees who were responsible for signing the HAP contracts necessary to initiate District housing subsidy payments to the Enterprise properties. *Id.* ¶¶ 47, 53, 73, 87, 112, 129, 149, 162 163, 181. Eimon Razjooyan's management of Enterprise employees in executing one of its key functions—obtaining housing subsidy payments—as well as his involvement obtaining licenses, performing illegal construction, and obtaining loans through his Enterprise LLC, all show that he "intentionally perform[s] acts that are related to, and further, [the Enterprise's] operation or management." *Philip Morris*, 449 F. Supp. 2d at 876.

Accordingly, the District adequately pleads the participation of all Defendants in the RICO Enterprise. *Philip Morris*, 449 F. Supp. 2d at 876-77 (finding the "operation and management" test satisfied where "each Defendant had some part in directing the affairs of the Enterprise by coordinating and causing the public dissemination of false, misleading or deceptive statements" in furtherance of the shared objective of the Enterprise to deny the link between smoking and adverse health outcomes).

### iii. The District Adequately Pleads Defendants' Intent.

Although several circuits have held that a RICO charge "does not include a scienter element over and above that required by the predicate crimes," *United States v. Boylan*, 620 F.2d 359, 361 (2d Cir. 1980); *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 908 (3d Cir. 1991); *United States v. Pepe*, 747 F.2d 632, 675-76 (11th Cir. 1984), the District nevertheless pleads that Defendants intentionally engaged in fraudulent conduct in furtherance of the Enterprise. This Court has found that "[k]nowingly implementing criminal decisions" is sufficient but not necessary to satisfy the participation requirement. *Lu v. Lezell*, 45 F. Supp. 3d 86, 95 (D.D.C. 2014). While Defendants must do more than "merely aiding . . . unwittingly" in racketeering acts, it is sufficient to show they knowingly committed such acts *or* "exercis[ed] broad discretion" *or* acted "'in cahoots' with those perpetuating the fraud by 'proferr[ing] advice' *or* 'assum[ing] any directive role.'" *Id.* at 95-96 (emphasis added) (citing *Vickers Stock Research Corp. v. Quotron Sys., Inc.*, 1997 WL 420265 at *4 (S.D.N.Y. July 25, 1997); *First City Nat. Bank & Trust Co. v. Fed. Deposit Ins. Co*., 730 F. Supp. 501, 509 (E.D.N.Y.1990)).

Here, the District alleges that Defendants are far from unwitting participants in the Enterprise. *Lu*, 45 F. Supp. 3d at 95. As discussed in Section III.A.1, the District adequately pleads that each Defendant intentionally participated in predicate racketeering activity as defined by 18 U.S.C. § 1961(1), including wire fraud, mail fraud, bank fraud, and obstruction of justice—that is, each Defendant knowingly implemented criminal decisions. *Lu*, 45 F. Supp. 3d at 95 (citing *Cedric Kushner*, 533 U.S. 158, 165 2001). The District also alleges that Defendants directed others to carry out such acts or, for Houri Razjooyan, controlled LLCs that carried out these acts, and coordinated to carry out the Enterprise's fraudulent purpose, including by communicating with one another and by transferring funds between Enterprise entities. Complaint ¶¶ 45-47, 71, 82, 86, 111, 129, 148, 162, 181, 314, 317, 325; *Lu*, 45 F. Supp. 3d at 95

(citing *Grant Thornton, LLP v. Off. of Comp. of the Currency*, 514 F.3d 1328, 1333 (D.C. Cir. 2008)). Further, the District alleges other intentional acts of participation in the Enterprise beyond the predicate acts—for example, alleging that Sam Razjooyan and Eimon Razjooyan direct, or own and control, companies that perform illegal construction at Enterprise properties. Complaint ¶¶ 45, 47. As was the case in *Lu*, where the Court found that allegations that the defendant received funds from plaintiff and improperly distributed them three times were sufficient to show that he implemented criminal decisions, the District has easily cleared the bar on intent. *See* 45 F. Supp. 3d at 95-96.

**iv. The District Adequately Pleads Proximate Cause Between Defendants' Racketeering Activity and the Harm to the District.**

Sam Razjooyan states, without elaboration, that the District does not plead "the proximate causal connection between a RICO violation and a legally cognizable injury to the District." ECF 44 at 2. Not so. Proximate cause simply requires "some direct relation between the injury asserted and the injurious conduct alleged." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) (rejecting argument that establishing proximate cause for a RICO claim predicated on mail fraud requires a showing of reliance). Here, the District alleges that "by violating 18 U.S.C. § 1962(c), Defendants fraudulently induced the District to enter into 523 HAP contracts with Enterprise properties, causing the District to transfer to the Enterprise over $16 million in housing subsidy payments" and has "caused the District to expend hundreds of thousands of dollars to inspect and remediate deplorable conditions at Enterprise properties and to relocate tenants displaced because of those conditions." Complaint ¶¶ 332-333; *see also* ¶¶ 8-13, 239-42. Accordingly, the relationship between Defendants' fraud in entering into HAP contracts and the District's harm is direct and proximate.

**v. The District Adequately Pleads that Defendants' Investment of Racketeering Income Harmed the District, in Violation of 18 U.S.C. § 1962(a).**

The District alleges that Defendants invested income derived from fraudulently obtained loans and housing subsidy payments into the Enterprise to enable it to purchase new properties and maintain control of existing properties, in violation of 18 U.S.C. § 1962(a). Defendants challenge that the District adequately pleads "an injury caused by the alleged investment or use of racketeering income, as distinct from injury allegedly caused by predicate acts." ECF 44 at 2, ECF 46 at 2, ECF 48 at 2. To the contrary, the District clearly pleads "injury that flowed from the defendant's use or investment of racketeering income," not just from the predicate racketeering acts. *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991).

A plaintiff may meet this requirement where, as is the case here, defendants invested racketeering income back into their own Enterprise and used that reinvestment to carry out further illegal activity harming the plaintiff. *Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385, 396 (6th Cir. 1989); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir. 1994) (it is sufficient to allege that the enterprise "itself was built with racketeering proceeds amassed from others *prior* to [plaintiff's] association with [defendant]."). In *Newmyer*, the Sixth Circuit found that, where racketeering proceeds from other victims are invested to "establish and operate the scam in which the plaintiffs [later] put their money" the plaintiffs can plead a claim under § 1962(a). 888 F.2d at 396. This recognizes that a claim under § 1962(a) lies where "plaintiffs could have been injured by [an illegal Enterprise itself] if the [scheme] into which they put their money (i.e., the enterprise) was itself funded with monies from *prior* racketeering against *prior* victims." *Vemco*, 23 F.3d at 133 (explaining *Newmyer* holding) (emphasis in original).

Here, the District was injured because Defendants invested the income that they gained from racketeering activity (i.e., mail fraud, wire fraud, and bank fraud) against other victims

(lenders) to acquire more multi-family residential properties and maintain control of existing properties, which resulted in ever increasing amounts of housing subsidy fraud and District agency response costs. Complaint ¶¶ 71, 82, 86, 111, 129, 148, 162, 181, 191, 241 331-333. As was the case in *Newmyer*, the District's harm derives from the Enterprise that was, itself, built through the investment of racketeering proceeds, primarily from victims other than itself (lenders). 888 F.2d at 396. Thus, the District adequately pleads its claim under § 1962(a).

**vi. The District Adequately Pleads that Defendants Used Racketeering Income to Operate the Enterprise.**

The District alleges that Defendants used income derived from racketeering activity to operate the Enterprise by allowing it to maintain its hold on properties and acquire new properties. Sam Razjooyan, however, argues that the "conclusory assertion that all Defendants used alleged racketeering income to operate an enterprise is insufficient under Rules 8 and 9(b)." ECF 44 at 2-3. As an initial matter, Rule 8(a)(2), not 9(b), applies to this inquiry, and the District adequately pleads its claims.

First, as detailed in Section III.A.v., above, the District alleges that Defendants invested income derived from racketeering activities into the Enterprise. Second, to the extent that there is any practical distinction between using racketeering income to invest in versus operate an enterprise, the District alleges specific facts regarding the use of funds to operate the Enterprise as well. The Complaint names over forty single-asset LLCs that, "instead of using the loan proceeds and housing subsidy payments for the propert[ies] [they] own[] to repair and maintain the property, transfer[] the funds to the Enterprise's core bank accounts to support the rest of the Enterprise and acquire new properties." Complaint ¶ 49, Appendix A. The Complaint also names three LLCs that the District alleges are "clearinghouse entities" whose primary purpose is to transfer racketeering-derived funds into, and between components of, the Enterprise to further its fraudulent schemes.

*Id.* ¶ 56. The District provides further detail about the activities of these Enterprise LLCs and their extraction of fraudulently obtained funds from the properties (Complaint ¶¶ 71, 82, 86, 111, 129, 148, 162, 181), as well as the use of these funds to operate the Enterprise by using the funds to acquire new properties or maintain control of existing properties (*Id.* ¶¶ 314, 317). Regarding each Defendant, the District specifically alleges that funds they obtained through racketeering activity were used to operate the Enterprise by allowing it to maintain control of properties and acquire new properties. *Id.* ¶¶ 45-47, 314, 317. Accordingly, the District meets the pleading standard here as well.

### B. The District Adequately Pleads that Defendants Received over $16 Million in Fraudulent Housing Subsidy Payments, in Violation of the FCA.

Count III of the District's Complaint alleges that Defendants induced the District to enter into HAP contracts by falsely certifying that the housing units were and would be kept up-to-code, even though it was part of Defendants' very business model to allow them to deteriorate into deplorable conditions, in violation of D.C. Code § 2-381.02(a)(1), (2). Complaint ¶¶ 229-242. Defendants assert that the District failed to specify "the specific Certification or claim for payment that [they] personally submitted or caused" and therefore does not adequately plead its FCA claims. ECF 44 at 2; ECF 46 at 2; ECF 48 at 2. This argument fails on both the facts and the law.

The FCA makes it illegal to "knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment" or "knowingly make[], use[], or cause[] to be made or used, a false record or statement material to a false or fraudulent claim." D.C. Code § 2-381.02(a)(1), (2). D.C. Superior Court recently held that Sam Razjooyan's submission of HAP contracts that falsely certified compliance with housing conditions standards was an FCA violation. *See* Order Granting in Part Motion for Summary Judgment and Default Judgment, *District of Columbia v. 1644 W St LLC, et al.*, Case No. 2024 CAB 5588 at 26-29 (D.C. Super. Aug. 3, 2026) (awarding the District

Summary Judgment against Sam Razjooyan and 1644 W St SE LLC under the FCA based on factually similar claims) (attached as Exhibit 1). So too, here, the District alleges detailed facts establishing its claim, including describing the HAP lease-up process, in which the HAP contracts operate as the claim for payment, and the false certifications that Defendants made in these contracts. Complaint ¶¶ 36-40. The District alleges the Defendants' involvement in authorizing and certifying these contracts. *Id.* ¶¶ 28, 232, 310, 338. And, the District includes a chart in the Complaint and a detailed Appendix that specifies the number of HAP contracts, the total amount of subsidy payment, and the specific defendant responsible for each of the Enterprise properties. *Id.* ¶ 241, Appendix A. This more than satisfies the pleading standard.

### C. The District Adequately Pleads that Defendants Sam Razjooyan and Houri Razjooyan Avoided Repaying Housing Subsidy Funds, in Violation of the FCA.

Count IV of the District's Complaint alleges that Sam Razjooyan and Houri Razjooyan, after court-ordered receiverships or bankruptcy trusteeships were entered, still received housing subsidy payments and improperly avoided their obligation to repay these funds to the District, in violation of D.C. Code § 2-381.02(a)(6), (9). Complaint ¶¶ 279-287. The FCA imposes liability on any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the District," D.C. Code § 2-381.02(a)(6), or who "is a beneficiary of an inadvertent payment or overpayment by the District of monies not due and knowingly fails to repay the inadvertent payment or overpayment to the District," D.C. Code § 2-381.02(a)(9). Defendants unsuccessfully argue that the District has failed to plead that either Defendant knew the subsidy payments they received were not due to them and knowingly avoided repayment. ECF 44 at 3; ECF 46 at 2.

The District pleads detailed allegations showing that Sam Razjooyan and Houri Razjooyan knowingly failed to repay inadvertent housing subsidy payments that they knew were the property

of bankruptcy trustees and lender receivers. Complaint ¶ 247 ("Sam Razjooyan controlled the finances of each entity listed in the chart in paragraph 246, above. He knew or acted in reckless disregard of the fact that the properties were under receivership and that the single-asset LLCs were no longer entitled to receive District housing subsidy payments."); ¶ 286 ("Upon information and belief, Houri Razjooyan authorized Sam Razjooyan to place 3968 MLK LLC, 4935 NHB Ave NE LLC, and 4400 Hunt Pl NE LLC into bankruptcy and knew or acted in reckless disregard of the fact that, after the commencement of the bankruptcy, and certainly after the appointment of the independent bankruptcy trustee, the housing subsidy payments the District paid to these entities were no longer the Defendants' property or the property of these entities. Nevertheless, Houri Razjooyan and Sam Razjooyan continued to receive those payments."). The Complaint goes on to state that Sam Razjooyan took steps to prevent the Court-ordered receivers from ever receiving these funds by transferring them from the bank accounts of the entities days after the payments were made. *Id.* at ¶ 250. Thus, Defendants' argument fails to stand up against the plain language of the Complaint.

**D. The District Adequately Pleads Its CPPA Claims Against All Defendants.**

Count V of the District's Complaint alleges that Defendants violated the CPPA in numerous different ways, including engaging in business in the District without a license and failing to address illegal housing conditions at the Enterprise's buildings in violation of the District's Property Maintenance Code and the implied warranty of habitability. Complaint at ¶ 363. Defendants argue that the District pleads "collective" allegations that do not contain "specific facts" creating individual liability for each Defendant under the CPPA. ECF 44 at 4; ECF 46 at 3; ECF 48 at 2.[5] Defendants are wrong. The District's Complaint contains highly detailed allegations

[5] Sam Razjooyan also disputes that "housing-code and licensing" violations establish CPPA liability. ECF 44 at 4. This is wrong. D.C. Code 28-3904(b)(18) explicitly states that "[i]t shall be

establishing individual liability for each Defendant for their CPPA violations. Furthermore, the Court has already found that the District "is likely to succeed on the merits of its DCCPPA claims." ECF 37 at 17.

"Corporate officers who participate in, or know of and had the ability to control, the illegal acts of a corporate entity are liable for violations of the CPPA." *District of Columbia v. EADS LLC*, No. 2018 CA 005830 B, 2023 WL 8850054 at *15 (D.C. Super. Aug. 28, 2023); *Dist. of Columbia v. Town Sports Int'l Consulting*, No. 2020 CA 3691 B, 2022 D.C. Super. LEXIS 30 at *11-12 (D.C. Super. July 7, 2022) (same); *District of Columbia v. Student Aid. Ctr., Inc.*, No. 2016 CA 3768 B, 2017 D.C. Super. LEXIS 18 at *7 (D.C. Super. Sept. 8, 2017); *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 498 (D.C. Cir. 2015). Defendants with oversight and decision-making authority for LLC owners of residential properties are routinely held liable for CPPA violations. *See District of Columbia v. Padilla*, 2025 WL 233662 at *3 (D.C. Super. Jan. 2, 2025) (finding that detailed descriptions of the conditions at the Property combined with allegations regarding Sam Razjooyan's role overseeing the property management company allowed the court to reasonably infer his knowledge and authority to control the CPPA violations); *EADS*, 2023 WL 8850054 at *12 (finding defendant liable for CPPA violations where she, as owner and property manager, had at least constructive notice of the conditions at the property). In fact, the D.C. Superior Court has twice denied Motions to Dismiss brought by Sam Razjooyan on identical arguments that the

---

a violation of [the CPPA] for any merchant to . . . Violate any provision of Title 12 of the District of Columbia Municipal Regulations." Title 12 of the District of Columbia Code of Municipal Regulations (DCMR) includes the Property Maintenance Code. *See* DCMR 12G. The CPPA also specifically prohibits misrepresentations as to licensure and violations of other consumer protection laws. D.C. Code § 28-3904(a)(1) ("It shall be a violation of this chapter for any merchant to . . . Represent that goods or services have a . . . licensure . . . that they do not have."); § 28-3904(b) ("It shall be a violation of this chapter for any merchant to engage in a trade practice in violation of any law or regulation in the context of a consumer transaction, whether or not any consumer is in fact misled, deceived, or damaged thereby.").

District failed to plead specific facts to establish his individual liability. *Dist. of Columbia v. Padilla, et al.*, Case No. 2024-CAB-5590, 2025 WL 233662 at * 3 (D.C. Super. Jan. 2, 2025); *District of Columbia v. 1644 W St LLC, et al.*, Case No. 2024 CAB 5588 (D.C. Super. Apr. 29, 2025) (denying Sam Razjooyan's Motion to Dismiss on identical arguments that the District had failed to plead "specific allegations" against him under the CPPA) (attached as Exhibit 2).

Here, the District specifies each property in the Enterprise, the number of Housing and Property Maintenance Code violations at that property, and which Defendant participated in the violations at the property. Complaint ¶¶ 151-156. The Complaint not only contains general allegations of Defendants' violations but also contains highly specific examples of Defendants' actions at several properties. *Id.* ¶¶ 151-156 ("Sam Razjooyan abandoned the tenants at the property and failed to perform basic maintenance...Tenants were subjected to fire safety violations, water leaks, trash accumulation, and rodent and pest infestations...Sam Razjooyan knew the Property was not in compliance with HQS and DCHA habitability standards."); *Id.* ¶¶ 223-225 ("A tenant at 3615 B Street SE has lived without heat in her unit since October 2025...The front door to the building does not always lock, garbage regularly accumulates in the parking lot, and there is a sewage smell...Houri Razjooyan...[has] provided effectively no property management service at this building."). Furthermore, the District alleges Defendants Sam Razjooyan and Eimon Razjooyan's involvement in overseeing employees at the Enterprise property management companies. *Id.* ¶¶ 45, 47. These allegations are more than sufficient to establish CPPA liability for Defendants.

## IV. CONCLUSION

For the foregoing reasons, the District respectfully requests that the Court deny the Defendants' Motions to Dismiss.

Dated: November 6, 2026

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

COTY MONTAG
Deputy Attorney General
Public Advocacy Division

JOANNA K. WASIK
Chief
MICHAEL S. MAURER
Assistant Chief
Housing and Environmental Justice Section

*/s/ Laura C. Beckerman*
LAURA C. BECKERMAN [1008120]
Senior Trial Counsel
Public Advocacy Division
Laura.Beckerman@dc.gov
(202) 655-7906

*/s/ Kathryn Blanco*
MATTHEW MEYER [1045084]
KATHRYN BLANCO [90040716]
Assistant Attorneys General
400 6th Street NW, 10th Floor
Washington, DC 20001
Kathryn.Blanco@dc.gov@dc.gov
(202) 890-9250

*Attorneys for the District of Columbia*

**Certificate of Service**

I certify that, on November 6, 2026 service of this filing was completed through the Court's CM/ECF system on all parties so registered and that I caused a copy of this filing to be served via USPS First Class mail as follows:

Sam Razjooyan
115 Bytham Ridge Ln.
Potomac, MD 20854

Houri Razjooyan
117 Bytham Ridge Ln.
Potomac, MD 20854

Eimon Razjooyan
117 Bytham Ridge Ln.
Potomac, MD 20854

*/s/ Kathryn Blanco*
KATHRYN BLANCO