UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DISTRICT OF COLUMBIA,**<br><br>Plaintiff,<br><br>v.<br><br>**ALI RAZJOOYAN, *et al.*,**<br><br>Defendants. | Case No. 26-cv-1210 (CRC) |

**OPINION**

The District of Columbia has sued a family of local landlords for allegedly operating a criminal enterprise that has victimized D.C. tenants and taxpayers, as well as private lenders, by maintaining dilapidated and dangerous rent-controlled apartments. One of the defendants' lenders now moves to intervene in the case. Concluding that the lender is not entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) and that permissive intervention under Rule 24(b) would unduly interfere with the District's efforts to protect the public interest, the Court will deny the motion.

## I. Background

The Court recounted the factual and procedural background of this case in a prior opinion and provides only a brief summary of the relevant details here. See District of Columbia v. Razjooyan, No. 26-cv-1210 (CRC), 2026 WL 2295368, at *1–6 (D.D.C. Aug. 10, 2026).

The District of Columbia (the "District") brought suit against brothers Ali ("Sam") and Eimon Razjooyan and their mother Houri Razjooyan (collectively, "Defendants") for allegedly "operat[ing] a criminal enterprise that acquires and controls dozens of dilapidated multi-family residential properties in the District." Compl. ¶ 1. According to the District, Defendants are "running a Ponzi-like scheme," allowing acquired properties to "remain in or deteriorate into

deplorable condition" while using those same properties "as bait to secure an ever-increasing number of sizeable loans" in order to "line the[ir] pockets" with the loan proceeds. Id. ¶ 2. The District brings five claims against Defendants, see id. ¶¶ 306–69, including—as relevant here—two counts under the civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), see id. ¶ 306–38.

Velocity Commercial Capital, LLC, d/b/a New Day Commercial Capital ("New Day") is one of Defendants' lenders. New Day maintains that it was "defrauded by Defendants' illegal scheme in violation of [RICO] as specifically alleged in the District's Complaint." Mot. to Intervene as Pl. by Velocity Commercial Capital, LLC d/b/a New Day Commercial Capital ("Mot. to Intervene") at 1. New Day has moved to intervene, both as of right and at the Court's discretion. See id. Both the District and Defendant Sam Razjooyan oppose intervention.

## II. Analysis

### A. Intervention as of Right

The Court must permit a party to intervene under Federal Rule of Civil Procedure 24(a)(2) if: (1) the motion to intervene is timely; (2) the party "claims an interest relating to the property or transaction which is the subject of the action"; (3) the party "is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) "the applicant's interest is [not] adequately represented by existing parties." Fund for Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003) (quoting Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998)).

New Day contends it is entitled to intervene as of right because it "meets all four criteria" set out by Rule 24(a). Mot. to Intervene at 3. The District contests application of the third prong, arguing that "denying intervention does not impair [New Day's] ability to protect its

interests in redressing its commercial lending loss with a money judgment against Defendants." Pl. the District of Columbia's Statement of Opposing P. & A. in Opp'n to New Day's Mot. to Intervene ("District's Opp'n") at 5. The Court agrees with the District. New Day is not entitled to intervention as of right because it is not "so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2).

New Day argues that because "the District's allegations include claims regarding Sam Razjooyan's fraudulent scheme directed at New Day," it "could be practically impaired from bringing successful RICO claims based on the same operative facts." Mot. to Intervene at 4. That is sufficient, according to New Day, to carry the "minimal" burden of demonstrating that its "interest would be impaired if it cannot intervene." Id. (citation omitted).

The Court is unpersuaded by New Day's impairment argument because it can bring its damages claims against Defendants under RICO or other applicable legal theories in a separate suit without facing any impediment or impairment from this case. To be sure, New Day is correct that impairment can result from "a practical disadvantage . . . even if the intervenor could raise the issue in another forum," regardless of whether its claims would later be barred by collateral estoppel or res judicata. Reply in Supp. of Mot. to Intervene as Pl. by Velocity Commercial Capital, LLC d/b/a New Day Commercial Capital ("New Day's Reply") at 6–7; see also Nuesse v. Camp, 385 F.2d 694, 702 (D.C. Cir. 1967) (explaining that "the opportunity to raise the same issue in another forum" is not in itself a "bar to intervention as of right"). New Day identifies such "a risk of practical impairment that justifies intervention" based on the possibility of an adverse ruling. New Day's Reply at 7. Specifically, New Day claims that if its "loan is found not to have been a 'predicate act' in furtherance of the racketeering Enterprise," then that could "create practical obstacles for New Day in a later action." Id. at 7. New Day

appears to be referring to complications stemming from stare decisis. See id. (citing Nuesse, 385 F.2d at 702, where the D.C. Circuit held that "stare decisis principles may in some cases supply the practical disadvantage that warrants intervention as of right").

But "the stare decisis problem is greatly lessened where there are parties already in the suit whose position on the issues is the same as the absent party's," Blake v. Pallan, 554 F.2d 947, 954 (9th Cir. 1977), as is the case here. See also SEC v. Everest Mgmt. Corp., 475 F.2d 1236, 1239 & n.4 (2d Cir. 1972) (explaining that stare decisis could not provide the requisite "practical disadvantage" because "the SEC is adequately representing the interests of appellants insofar as the stare decisis problem is concerned," even though the court found that the interests of the party seeking to intervene were "not adequately represented by existing parties because only appellants claim damages").[1] Because both the District and New Day offer New Day's loan to Defendants as a RICO predicate act, any stare decisis problem is minimized. And the consequences of stare decisis are further diminished by the fact that this is not "a question of first impression" such that one "may expect that a decision by the District Court here, the first judicial treatment of this question, would receive great weight." Nuesse, 385 F.2d at 702. Rather, there is no particular reason to think that any decision by this Court pertaining to New Day's loan "would receive great weight," id., since that ruling would simply be persuasive and not binding authority if another district court were to consider the issue. For example, if New Day brings its

[1] New Day tries to distinguish the Second Circuit's reasoning in Everest by arguing that "[u]nlike the intervenors" there, "New Day is not being adequately represented by the District (which the District does not contest)" because "the [D]istrict has not sought damages on behalf of New Day, but only on its own behalf." New Day's Reply at 7 (emphasis omitted). That distinction is of no matter, though, because the Second Circuit found there was no impairment based on stare decisis *despite* also holding that the intervenors' interests were not adequately represented due to the very fact that the SEC was not claiming damages. See Everest, 475 F.2d at 1239 & n.4.

own RICO claims against Defendants, it could advance a different argument than the District as to whether its loan constitutes a predicate act. That argument could dissuade a district court from adopting any future decision on the issue by this Court, and it would not matter for purposes of stare decisis whether that distinct argument is presented in the current litigation or a separate suit.

Accordingly, denying intervention would not cause New Day to suffer undue practical impairment in protecting its interest, so it is not entitled to intervention as of right.[2]

B. Permissive Intervention

Alternatively, New Day urges the Court to permit it to intervene under Federal Rule of Civil Procedure 24(b), which allows intervention by a party who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "[P]ermissive intervention is an inherently discretionary enterprise." EEOC v. Nat'l Child.'s Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998). In evaluating a motion for permissive intervention, "the court must consider 'whether the intervention will unduly delay or prejudice the rights of the original parties' and may also consider 'whether parties seeking intervention will

[2] In its reply brief, New Day also argues that "considering that the underlying predicate acts alleged by the District involve multiple, prosecutable federal crimes, [it] also is concerned as to its practical ability to gather evidence, later, in furtherance of a separate RICO claim should such a criminal action be pursued." New Day's Reply at 7. The Court need not consider this because "[a]rguments raised for the first time in a reply brief are waived." Nippon Shinyaku Co. v. Iancu, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019), aff'd, 796 F. App'x 1032 (Fed. Cir. 2020).

In any case, consideration of New Day's argument would not change the Court's conclusion. New Day cites Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992). See New Day's Reply at 8. In that case, the court granted the federal government's motion to intervene where it sought "to stay civil discovery pending disposition of the criminal case" because the plaintiff's claims, including under RICO, were related to a pending federal criminal trial. Twenty First Century Corp., 801 F. Supp. at 1009. While New Day could hypothetically face a similar issue if it pursues its RICO claims in a separate suit, this does not impair its ability to protect its interest because (1) that very same issue could arise in this case as well if the federal government sought to intervene; and (2) the Court is not aware of any pending federal criminal prosecution based on the acts alleged by the District.

significantly contribute to . . . the just and equitable adjudication of the legal question presented.'" Ctr. for Biological Diversity v. EPA, 274 F.R.D. 305, 313 (D.D.C. 2011) (alteration in original) (internal citations omitted) (first quoting Fed. R. Civ. P. 24(b); and then quoting Aristotle Int'l, Inc. v. NGP Software, Inc., 714 F. Supp. 2d 1, 18 (D.D.C. 2010)).

In arguing that "intervention will not delay or prejudice any parties," New Day emphasizes the timeliness of its motion to intervene and the fact that the Court "has yet to rule on the substance of the District's claims for relief." Mot. to Intervene at 5; see also id. ("[T]his Motion was filed within two weeks of the Court's setting a status conference . . . and within 2 business days of the status conference[.]").

But as the District rightly points out, "the 'complicating effect' of New Day's intervention 'outweighs any advantage of a single disposition of the common issues.'" District's Opp'n at 9 (quoting Everest, 475 F.2d at 1240). "Where suit is brought by the government to enforce the law, public . . . policy militates against the pendency of private claims and the concomitant delay, confusion and complexity they introduce." SEC v. Nat'l Student Mktg. Corp., 59 F.R.D. 305, 307 (D.D.C. 1973); see also U.S. Commodity Futures Trading Comm'n v. Efrosman, No. 05 Civ 8422 (KMW), 2012 WL 2510338, at *4 (S.D.N.Y. June 26, 2012) (explaining that "[c]ourts are reluctant to allow private parties to intervene in government enforcement actions" and "have denied permissive intervention because it places undue costs and burdens on the government, including increasing the complexity of cases and slowing litigation"). Even if New Day is correct that "this RICO case is not akin to a government enforcement action by one of Congress's designated federal regulators," New Day's Reply at 10, the same logic applies. For one, the District points out that there are at least 28 other "similarly situated, sophisticated financial institutions that lost money" at the hands of Defendants, meaning

that New Day's intervention could "open the floodgates to intervention by any number of other lenders[,] giving rise to an unwieldy case with dozens of plaintiffs by intervention." District's Opp'n at 9. And allowing New Day and potentially dozens of other lenders to intervene "would inevitably reorient the case toward the private interests of sophisticated financial institutions that can easily bring their own actions." Id. at 10. That would undermine the purpose of the District's suit, which was brought "to vindicate the interests of the public and the District for serious violations" of not just RICO, but also two other state statutes. Id. at 9. Allowing New Day and other interested private parties to piggyback on the District's suit through intervention would foreseeably complicate that effort.

New Day responds that (1) "any potential prejudice or delay" that would result from it and potentially other lenders intervening can be mitigated by the Court imposing conditions to ensure efficient discovery; and (2) prohibiting intervention would instead "unnecessarily burden the courts" by requiring a separate suit involving the same Defendants, "overlapping predicate acts," and "much of the same discovery." New Day's Reply at 9. But these responses overlook the prejudice the District would suffer by shifting the focus of the suit from vindicating the public interest to vindicating the interests of private financial institutions. And given the primacy of the public interest in this case, New Day's intervention will likely not "significantly contribute to . . . the just and equitable adjudication of the legal question presented." Ctr. for Biological Diversity, 274 F.R.D. at 313 (quoting Aristotle Int'l, Inc., 714 F. Supp. 2d at 18). Exercising the "wide latitude afforded to district courts under the rule," Nat'l Child.'s Ctr., Inc., 146 F.3d at 1046, the Court concludes that any potential tools to mitigate prejudice or delay and any potential reduced burden on the courts do not outweigh the distinct prejudice that the District

would likely suffer should New Day and possibly other lenders be allowed to intervene in the case. It therefore denies intervention under Rule 24(b). [3]

## III. Conclusion

For the foregoing reasons, the Court will deny Velocity Commercial Capital, LLC, d/b/a New Day Commercial Capital's [14] Motion to Intervene as Plaintiff. A separate Order shall accompany this Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: November 19, 2026

[3] The Court also notes that because the District and New Day have "divergent interests" in related proceedings in D.C. Superior Court and the Bankruptcy Court, "any judicial efficiency that would ordinarily be achieved through intervention" may be lost here. District's Opp'n at 10. New Day insists that "New Day and the District have met and conferred in this case as well as in the bankruptcy case" despite those divergent interests and that there is "no reason" why either party would be unable "to continue to act professionally in this matter." New Day's Reply at 10. Still, the possibility that those divergent interests could undermine any benefit to judicial economy further counsels against permissive intervention here.